SAVANNAH BANK AND TRUST COMPANY *vs.* HARTRIDGE.-

A rule of a bank provided that an officer therein could not become its debtor. Its cashier, desiring to procure money from the bank to purchase railroad stock, made an agreement with a third party, who acted with notice of the rule, by which the latter should purchase two hundred shares of stock; that the cashier, as such, should advance to him the money of the bank to pay therefor; that such third person should give his note to the bank for the money and deposit the stock as collateral security. This was done, and the cashier assumed the payment of the note, the stock being his. There was no other notice to the bank of this arrangement except the knowledge of the cashier:

*Held*, that the bank was not bound by the contract between the cashier and the third party, unless it had notice of the same and authorized it, or in some way ratified it; nor was it bound by the knowledge and ratification of the cashier alone.

(*a*.) The person buying the stock and giving the note advised the cashier to sell it; the latter agreed that he might use his own discretion in the matter; he effected a sale, but the cashier refused to confirm it or to deliver the stock:

*Held*, that if the stock subsequently depreciated in value, this conduct of the cashier would not render the bank liable under a plea of recoupment or set-off against a suit on the note.

(*b*.) The charge of the court was erroneous, and the verdict was unsupported by the evidence.

(*c*.) The bank held the note and the stock pledged for its payment unaffected by any arrangement between the maker and the cashier. If the maker desired to sell the stock, he should have redeemed it or placed other collaterals in its stead, such as the bank might have agreed to take.

December 19, 1884.

Principal and Agent. Banks. Contracts. Charge of Court. Verdict. Recoupment. Set-off. Pawns. Before Judge HARDEN. City Court of Savannah. July Term, 1884.

To the report contained in the decision, it is only necessary to add that the following were among the grounds of the motion for new trial:

(24.) Because the court charged the jury as follows: "Now as to the question of the difference in price, the third plea. It has seemed to me that in the discussion a portion of the facts of that plea have been somewhat overlooked. The argument has been made to you that Mr. Hartridge, when he came to Mr. Hatch (the cashier) to see him about this sale, came to him as an individual, because he said that this was Mr. Hatch's property and he was only dealing then with Mr. Hatch as an individual in that matter. That shows that at some moments the full effect of this plea may have been overlooked. This plea is based on the idea that the other pleas are wrong and will not be sustained. A man may file as many contradictory pleas

as he wants to.    He said, I don't owe this money at all; and give my reasons in the second, third and fourth pleas; but if you find that this is really my note and that I am liable on it, then this dealing with Mr. Hatch may be dealing with the bank.    Thus, if this note was Mr. Hartridge's, even though held for the benefit of Mr. Hatch; if these securities were Mr. Hartridge's, then Mr. Hartridge, in talking to Mr. Hatch, if he was the proper officer, and you have heard the testimony on that point, may have been talking to Mr. Hatch, the cashier, dealing with the man who was representing the bank, because, on that supposition, Mr. Hatch is no longer responsible to the bank, though he may be responsible to Mr. Hartridge and Mr. Hartridge responsible to the bank, and Mr. Hartridge had no interest in the matter so far as between himself and the bank, his interest being outside of the direct transaction, so that when Mr. Hartridge went to see him, he may have gone to see him as an officer of the bank to have the transfers made, or may have consulted him as an interested person."—Objected to, because :    1st.  " It does not correctly state the plea referred, to, or the meaning of it; presented for the consideration of the jury issues not in the case; and was without evidence to support it. "    2d.  " It was without evidence to warrant its being given."

(25.) Because the court charged the jury as follows: "The person who has pledged his stock to secure a loan transfers to the bank the right to dispose of that for the purpose of protecting itself, but they must use reasonable diligence, care and discretion in disposing of it; then if he wants to get that collateral out, he can offer other security of equal value, and if they consent to the exchange, it can be made; if they refuse, it cannot.    If he says, ' I want to sell this stock, the stock will bring enough to pay the debt,' they must let him sell it and pay the debt; but if it will not bring enough to pay the debt, they are not bound to let him sell it, unless he gives them indemnification which they accept, or pays them the difference.    If they

have $20,000 loaned on security, which was worth that much, but which shrunk to $19,000, he would not have the right to say ' Sell these securities for $19,000,' unless he said also, ' Here is the money for the balance'; otherwise, you not expect them to consent; they have a right to control it, but yet with reasonable care and diligence    ' I still have an interest in it, that is, that you shall protect yourself, but not cause me unnecessary loss; in helping yourself you must not hurt me more than the necessity of the case requires.' "—Objected to, because :    1st.  " It was without evidence to warrant its being given."    2d.  " It was con- trary to law."    3d.  " It is otherwise illegal."

(27.)  Because the court charged the jury as follows: " If the jury find from the evidence in this case, that, in making the note sued on, the defendant acted solely as the agent of Milo Hatch, with the knowledge and consent of the plaintiff, and that the credit in the transaction was given by the plaintiff to Mr. Hatch alone, and with no in- tention to bind Mr. Hartridge personally, then the defend- ant is not liable to the plaintiff upon this note.   I have already quite fully charged that, but it is the right of de- fendant to have the charge given in the language I have just read."—Objected to, because :    1st.  " It was without evidence to warrant its being given."   2d.  " It was con- trary to law."

(30.)  Because the verdict was contrary to law and evi- dence, and without evidence to support it.

The motion was overruled, and plaintiff excepted.

CHISHOLM & ERWIN, for plaintiff in error.

GEO. A. MERCER, for defendant.

BLANDFORD, Justice.

The record makes this case : Milo Hatch was the cashier of the Savannah Bank and Trust Company, and wishing to procure money from the bank to purchase Central Rail-

road and Banking Company stock, he applied to A. L. Hartridge, who knew that, according to the rules of the bank, an officer of the bank could not become its debtor. It was agreed between them that Hartridge should purchase two hundred shares of Central Railroad stock, and that Hatch, as such cashier, should advance to Hartridge the money to pay for the same, it being the bank's money, and that Hartridge should give his note to the bank for the money, and deposit the stock of the Central Railroad as collateral security for the payment of his note to the bank. This was done, Hatch assuming the payment of Hartridge's note, and the stock deposited being his. It does not appear that the bank knew of this arrangement between Hatch and Hartridge, except the knowledge of Hatch, the cashier, who made this arrangement contrary to the rules of the bank, of which Hartridge was cognizant. It is also shown that, soon after the giving of the note sued on, Hartridge went to Hatch and advised him to sell the stock deposited, when Hatch agreed that Hartridge might use his own discretion, and do as he thought best about the matter. Soon thereafter, Hartridge effected a sale of this stock on time. Hatch was informed, and he refused to confirm this sale and to deliver to Hartridge the stock. It does not appear that any officer, or other person connected with the bank, knew of this transaction but Hatch, the cashier. If this sale by Hartridge, of the stock deposited as security for his note due the bank, had been effected, the money arising from said sale would have paid all of Hartridge's note, except twenty-nine hundred dollars. Afterwards, the bank sold this stock, and it failed to pay Hartridge's note by seven thousand nine hundred dollars— the amount claimed to be due on Hartridge's note by the bank. The bank brought suit on this note against Hartridge. He pleaded

(1.) The general issue.

(2.) That the note was without consideration; that the same was taken by the bank with the understanding that

he was not to pay the same, but that the bank was to look alone to Hatch for the payment of the same.

(3.) He pleaded recoupment and set-off, claiming that the bank authorized him to sell the stock deposited, which he did, and that the bank refused to deliver afterwards, to consummate the sale, whereby he lost five thousand dollars, which he asked to set off against plaintiff's claim.

The jury found the issue on the third plea in favor of Hartridge. On the other pleas they found the issues in favor of the bank. The plaintiff moved for a new trial on many grounds, which the court overruled, and this judgment the plaintiff excepted to, and error is assigned thereon to this court.

The contract between Milo Hatch, the cashier of the bank, and Hartridge being contrary to the rules of the bank, and the same being known to Hartridge, was illegal, and the bank was not bound thereby, unless it had notice of the same and authorized it, or in some way ratified it. In order to bind the bank by such a contract, it should be shown affirmatively either that the bank authorized such a contract or with full knowledge of the same, ratified it. The fact that Hatch, the cashier, who was a party to this illegal contract, knew it and ratified it on behalf of the bank, will not do; it must be shown that other persons, who were authorized to act for the bank, knew of this contract, and either authorized or ratified the same; otherwise the bank will not be bound. To hold otherwise would be to lay down a rule which might ruin every moneyed institution in the land. 5 Wallace, 703; 95 U. S. R., 557; Story on Agency, §210; 25 N. Y., 293; 1 Kelly, 286; Morse on Banks and Banking, 196, 197, 188, 189, 89, 90, 131.

We think the court should have granted a new trial in this case, because we not only think the court erred in his instructions to the jury as to the law which governed the third plea, but that the verdict of the jury is wholly without evidence to sustain it. There is not a particle of evidence that Hartridge ever applied to any one connected

with the bank for leave to sell the stock deposited as security for the payment of his note, or for a transfer of this stock to the persons to whom he had negotiated to sell it, except Milo Hatch, the cashier, and the person who had, with Hartridge, entered into this illegal contract. As to the bank, it held Hartridge's note and the stock pledged for its payment unaffected by any arrangement between Hartridge and Hatch. If Hartridge desired to sell the stock, he should have redeemed it, or placed other collaterals in its stead, such as the bank might have agreed to take. Jones on Pledges, §§606, 728, 729 ; 65 *Ga.*, 305. The verdict of the jury being without evidence to support it, the court should have granted a new trial.

Judgment reversed.