THE SAVANNAH BANK AND TRUST COMPANY *vs.* HARTRIDGE.

1. When this case was formerly before this court (73 *Ga.*, 223), it was held that, where a rule of a bank prohibited an officer therein from becoming its debtor, and its cashier, desiring to ob·tain money from the bank to purchase railroad stock, made an agreement with a third party by which the latter should purchase two hundred shares of stock, the cashier advancing the money of the bank to pay therefor, and that such third person should give his note to the bank for the money, and deposit the stock as collateral security; and where this was done, and the cashier assumed the payment of the note, the stock being his; and where both parties knew the rule of the bank, this was an illegal transaction between the cashier and the third party, and the knowledge of the cashier in respect to it was not the knowledge of the bank, and did not bind it.

(*a.*) On a second trial, it did not appear that the bank in any manner acquiesced in, consented to or ratified anything which the cashier and the third party did, further than to hold the note of the third party and the securities pledged for its payment, which it had a right to do; and the charge of the court in respect to the plea of recoupment or set-off, which plea alleged that the third party applied to the cashier to sell the stock; that the latter agreed, but subsequently refused to confirm the sale or deliver the stock; and that it thereafter depreciated in value; and which sought to recoup the damage against the bank's suit on the note, was erroneous, as being based on a hypothetical state of facts not warranted by the evidence.

2. The request to charge set out in the thirty-third ground of the motion for new trial was legal and pertinent, and should have been given by the court.

3. The verdict of the jury is wholly without evidence to support it, and a new trial should have been granted on that ground. The last trial of this case developed no new facts, and the former ruling controls it.

February 9, 1886.

Principal and Agent. Banks. Notice. Contracts. Charge of Court. Verdict. Before Judge HARDEN. City Court of Savannah. July Term, 1885.

To the report contained in the decision, it is necessary to add only that the jury found for the plaintiff $3,565.62,

principal (the suit being for $9,000.00, principal.) The plaintiff moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court charged the jury as follows:

" Now as to the question of the difference in price—the third plea. This plea is based on the idea that the other pleas are wrong and will not be sustained. A man may file as many and as contradictory pleas as he wants to; he may say I don't owe this money at all, and give my reasons in the second and fourth pleas; but if you find that this is really my note, and that I am liable on it, then my dealing with Mr. Hatch was a dealing with the bank; thus if this note was Mr. Hartridge's, even though held for the benefit of Mr. Hatch, if these securities were Mr. Hartridge's, then Mr. Hartridge, in talking to Mr. Hatch, if he was the proper officer—and you have heard the testimony on that point—may have been talking to Mr. Hatch, the cashier, dealing with the man who was representing the bank, because on that supposition Mr. Hatch is no longer responsible to the bank, though he may be responsible to Mr. Hartidge, and Mr. Hartridge responsible to the bank; and Mr. Hatch had no interest in the matter so far as between himself and the bank, his interest being outside of the direct transaction, so that when Mr. Hartridge went to see him, he may have gone to see him as an officer of the bank to have the transfers made, or may have consulted him as an individual, as an interested person."—Error was assigned in this charge because, first, it did not correctly state the plea referred to or the meaning of it, but presented for the consideration of the jury issues not in the case and was without evidence to support it; second, because it was without evidence to warrant its being given."

(3.) Because the court charged the jury as follows: " The person who has pledged his stock to secure a loan

transfers to the bank the right to dispose of it for the pur-pose of protecting itself, but they must use reasonable care, diligence and discretion in disposing of it; then if he wants to get that collateral out, he can offer other security of equal value, and if they consent to the exchange, it can be made; if they refuse, it cannot, or he must pay the debt. If he says 'I want to sell the stock, the stock will bring enough to pay the debt,' they must let him sell it and pay the debt; but if it will not bring enough to pay the debt, they are not bound to let him sell it, unless he gives them indemnification, which they accept, or pays them the difference. If they have $20,000 lent on security which was worth that much, but which shrunk to $19,000, he would not have the right to say, 'Sell these securities for $19,000,' unless he said also, 'Here is the money or other good security for the balance'; otherwise you cannot ex-pect them to consent; they have a right to control it, but yet with reasonable care and diligence. I still have an interest in it, that is, that you shall protect yourself, but not cause me unnecessary loss; in helping yourself, you must not hurt me more than the necessity of the case, with fair judgment, requires."—Said charge being specially erroneous, first, in that it was without evidence to warrant its being given; second, in that it was contrary to law; third, in that it was otherwise illegal.

(4.) Because the court charged the jury as follows: "Strictly speaking, under the contract, the securities could be demanded only upon payment of the debt or tender of other collateral acceptable to the bank. But if Hartridge was dealing with Hatch as cashier, and if Hatch was au-thorized by the bank to act as cashier in this matter, and Hartridge offered to pay the debt with the proceeds of the sale, and his check for the balance, and the stock was re-fused to be surrendered, then you may determine whether such refusal was the exercise of reasonable control or not; whether or not the offer made by Hartridge was a reason-able offer, which the bank ought to have accepted, or

whether it was an offer which the bank in reason and prudence ought not to accept; bearing in mind that the bank has discretion in the matter, which is not to be interfered with, unless, in your opinion, that discretion was improperly used, used without judgment; unless, in your opinion, they were trying to help themselves in a way not authorized by the circumstances surrounding it."—Said charge being specially erroneous, first, in that, under the evidence in this case, Hartridge could not deal with Hatch, cashier; Hatch was not authorized by the bank to act as cashier in this matter, and Hartridge never offered to pay the debt; second, in that said charge altered the rights possessed by the bank under the written pledge contained in the note sued on; third, in that it left to the jury to determine whether the bank had exercised a reasonable discretion, if they believed that Hartridge made an offer to pay the debt, and the bank refused it, while there was no evidence of any offer made by Hartridge to the bank to pay the debt, no refusal on the part of the bank to accept payment of the debt; fourth, in that the said charge was otherwise illegal.

(5.) Because the court charged the jury, at defendant's request, as follows: "If the jury find from the evidence that the defendant, A. L. Hartridge, was personally bound on the note given to said bank, but further find that said Milo Hatch, the cashier of said bank, had a personal interest in the railroad stock, pledged to secure said note, and that said bank, through its executive officers, knew that its said cashier had such personal interest, and still permitted him, as cashier, to conduct and manage the details of said loan, then I charge you that such personal interest in said loan and stock did not debar said Hatch from representing said bank in said transaction, as its cashier; and that if said defendant called upon said Milo Hatch, as the cashier of said bank, and demanded a sale of said collaterals, with the intention of paying the difference between their then value and the amount due on the note, which said inten-

tion was made known to said cashier, and of then and there taking up said note and terminating said loan; that said cashier refused to allow the sale of said collateral and the consummation of said purpose; and that said stock continued to depreciate in value, and was subsequently sold by said bank at a heavy loss, then I charge, if you find that such loss was due to the refusal of said bank, without sufficient reason, to sell said collateral, at the request of defendant, and to allow him to pay the difference and take up said demand loan, that you are authorized to deduct from the sum you may find due to the plaintiff on said note the amount of depreciation in value of said stock between the time when defendant made an effort to have said stock sold and the time of its actual sale by said bank. But this only on the supposition that you find that the bank knew of Hatch's interest, and authorized him to continue to manage the transaction."—Said charge being specially erroneous, first, in that it was without evidence to support it; second, in that it was contrary to law.

(33.) Because the court refused to give to the jury the following charge: "If the jury find that Mr. Hartridge and Mr. Hatch agreed that the stock should be sold by Mr. Hartridge; that Mr. Hartridge thereupon sold the stock upon time sales; that Mr. Hatch, when called upon by Mr. Hartridge for the stock, refused to deliver it, not because the sales were made on time, but because the loss was too great; that Mr. Hartridge intended, if Hatch delivered the stock, to realize on it at once and pay the proceeds to the bank, and then to pay the bank the balance due on the note, taking from Hatch to secure the reimbursement to him, Hartridge, of this balance, a part payment in cash, a policy of insurance on the life of Hatch, and an agreement to settle any deficiency by installments; and that Hatch knew of this intention of Hartridge, then your verdict should be against defendant on third plea."

The motion was overruled, and the plaintiff excepted.

CHISHOLM & ERWIN, for plaintiff in error.

GEO. A. MERCER, for defendant.

BLANDFORD, Justice.

Milo Hatch, the cashier of the plaintiff in error, entered into a contract with defendant in error whereby Hartridge was to purchase certain shares of the stock of the Central Railroad for Hatch. Hartridge was to give his note to the bank and to deposit the stock as collateral security for the payment of the same, and Hatch was to advance the money of the bank to Hartridge to pay for this stock. This contract was consummated between Hatch and Hartridge. This contract was contrary to the rules of the bank, which was known to both Hatch and Hartridge. This, then, amounted to a misappropriation of the funds of the bank, for which both Hatch and Hartridge were liable to the bank. See Code, §3151.

Hartridge afterwards applied to Hatch for leave to sell the stock, which Hatch agreed to. Hartridge effected a sale of the stock, and applied to Hatch to transfer the stock to him, so that he could consummate a sale of the stock. This Hatch refused to do, Hartridge stating that he wished to sell the stock and pay off his note. The bank was not informed of this transaction until long after this.

1. We held, when this case was tried at the September term, 1884,* that as this was an illegal transaction between Hatch, the cashier, and Hartridge, the knowledge of Hatch was not the knowledge of the bank, and it was not bound thereby. Nor does it appear from this record that the bank in any manner ever acquiesced in, consented to or ratified anything which Hartridge and Hatch did, further than to hold Hartridge's notes, and the securities pledged for its payment, which it had the right to do; and as we held before, we now hold that the

* 73 *Ga.*, 223.

charge of the court as to the plea of recoupment and set-off is erroneous. It was erroneous then, and is now erroneous, because the charge is based on a hypothetical state of facts not warranted by the evidence in the case.

2. The request of the plaintiff to charge as set out in the thirty-third ground in the motion for new trial was legal and pertinent, and should have been given by the court, and it was error to refuse to charge this request.

, 3. The verdict of the jury is wholly without evidence to support it, and a new trial should have been granted on this ground. The last trial of this case in the court below developed no new facts which materially affect this case, and we think that the decision of this court rendered at the September term, 1884, rules and decides it.

Let the judgment of the court below be reversed.