McGREGOR, receiver, *v.* WITHAM *et al.,* and *vice versa.*

1. It should unequivocally appear in a bill of exceptions who are the parties thereto, and an acknowledgment of service thereof does not relate to or bind any person not actually named or sufficiently described therein as a defendant in error when the acknowledgment is entered.
2. Properly construed, the amended petition set forth a cause of action in favor of the receiver of an insolvent bank against the defendants, for having unlawfully appropriated its funds to their own benefit while they were officers thereof.
3. It did not appear from the petition, as amended, that such cause of action was barred by the statute of limitations at the time the suit was brought.

Submitted July 18, — Decided November 12, 1906.

Equitable petition. Before Judge Rawlings. Warren superior court. February 1, 1906.

On March 13, 1903, a suit was brought in the superior court of Warren county by "James A. Anderson, assignee of the Bank of Warrenton, Mrs. C. N. Churchhill, James L. Johnson, and Mrs. L. L. Cason, stockholders of said bank, suing for themselves and the use of other stockholders, and A. J. Lockett, C. F. Johnson, and Mrs. Lizzie Adkins, depositors," against W. S. Witham and J. F. Allen. The allegations of the petition were substantially as follows: In June, 1898, Witham was president and Allen cashier of the Bank of Warrenton, which had a captital stock of $25,000, of which Witham owned or controlled $14,400. Witham "proposed to sell his and the stock which he controlled to the said J. F.

Allen, cashier, and thereby give said Allen control of said bank and elect [him] president" thereof; and Allen was elected president "by said Witham" to induce him to purchase this stock. At the time Witham made the proposition to sell to Allen, it was well known to Witham that Allen had only $3,000 in money with which to pay for the stock. Witham did sell his stock to Allen for its face value of $14,400, receiving therefor "the $3,000 in cash and taking . . Allen's notes for the other $11,400." At the time of the transaction between Witham and Allen they concocted or devised a scheme by which Allen was to ultimately pay Witham the balance of the purchase-money for the stock with funds belonging to the Bank of Warrenton. The allegations as to the precise manner in which this scheme was carried out are, in some respects, contradictory, and there is not only a lack of clearness and definiteness of allegation in reference to the details of the scheme, but, at times, such a confusion of statement as renders it somewhat difficult to exactly understand what facts the pleader intended to allege. But this much is clear, that the pleader intended to allege that Allen, as cashier, and Witham, as president of the bank, entered into a scheme the object of which was that Allen should ultimately pay the balance of the purchase-money for the stock with funds of the Bank of Warrenton, and that the intent of the conspirators was to misappropriate the funds of that bank, and that they did "appropriate said funds to their own use and benefit, to wit, the said purchase of the Witham stock by Allen with the said funds as aforesaid, and the receipt of said funds in payment by said Witham, to the damage of petitioners." From one part of the petition it appears, that Witham took the notes of Allen for $11,400, endorsed them, and got various banks of which he, Witham, was president to advance Allen the money on them with which to pay for the stock, and that when these notes matured Allen used the funds of the Bank of Warrenton in paying them. From another part of the petition it appears that one Percy May loaned Allen $5,000 of the money to pay Witham, and this loan was paid with money of the Bank of Warrenton, and that "the other $6,400 came from some one or more of Witham's other banks," at "the instance of Witham, and was paid off with funds of said Bank of Warrenton." While in the first part of the petition it was alleged that Allen was elected president of the bank by Witham to induce him to purchase the

stock, in another portion thereof it was alleged that Witham was president of the bank at the time that Allen misappropriated its funds in the manner and for the purpose set forth in the petition. The petition alleged "that while said fraud was committed during 1898, it did not become known until Feb. 17, 1902, at the time of the failure of said bank," and that petitioners could not have known it sooner.

In due time the defendants demurred to the petition, upon the ground that it set forth no cause of action against the defendants, or either of them, and upon the further ground that if a cause of action was stated, it was barred by the statute of limitations. The judge of the circuit in which the suit was brought being disqualified in the case, the hearing of the demurrer was, by regular order, referred to Judge B. T. Rawlings, "with authority to hear and determine said demurrer in vacation and pass final judgment thereon," which he did on February 1, 1906. When the case came on to be heard under the demurrer, the plaintiffs offered an amendment to the petition, in which they alleged, that on February 17, 1902, the Bank of Warrenton, being wholly insolvent, closed its doors and suspended its business, and J. F. Allen, as president of the bank, and W. R. Walker, as its cashier, executed a deed of assignment of all of its assets to James A. Anderson, one of the petitioners," and that he brought the suit under such deed of assignment. There were further allegations, the purport of which was, that although the president and cashier of the bank had executed this deed of assignment without the corporate action required to authorize them to do so, the assignment had been, for reasons stated, impliedly ratified by the stockholders and creditors of the corporation; and that under proceedings to which all of the stockholders and directors were parties, the court had adjudged and decreed the assignment to be valid. In this amendment Anderson alleged that he, as assignee of the bank, was entitled to maintain the suit; the other petitioners disclaimed any right to do so in the event the court adjudged that Anderson, as assignee, was the proper party plaintiff, but claimed that if he was not entitled to prosecute the action, they, as stockholders and creditors of the corporation, were, under the circumstances of the case, entitled to do so. This amendment also made the following allegations: In June, 1898, the subscribed capital stock of the bank was only $21,500, although the

capital stock required by law and the bank's charter was $25,000. "Said bank had at said time a book surplus of only a few dollars, and with deductions for overvaluation of [its] property and bad loans, there was no surplus at all. The withdrawal of said $11,400 was therefore, in effect, a withdrawal of more than half the capital stock of said bank by said defendants, said Allen being then and ever since insolvent and unable to replace the same, and so known to said Witham." "Said withdrawal, in addition to said fraudulent intent thereby to return to said Witham his said contributions to the capital stock of said bank, leaving to the depositors and creditors in lieu thereof only the uncollectible paper of said Allen, was contrary to law, and invalid as against said depositors and creditors. The loan to said Allen of an amount exceeding half of the capital stock of said bank, which was done on no other security than the hypothecation of said stock, was likewise contrary to law, and, entering into and forming a part of said scheme, rendered the whole invalid, certainly as against the depositors and creditors of said bank." "By reason of the fact that the defendants cunningly contrived first to borrow money to pay . . Witham on his endorsements from other banks, replacing the same with the assets of the Bank of Warrenton only at a later date, to wit, June, 1899, it was not apparent that said loan to . . Allen had been made to purchase said stock, and that said assets of [the] bank had indirectly been abstracted for the benefit of said Witham; nor did it appear, nor was it known, nor could it have been known in the exercise of ordinary diligence, to the directors and stockholders of said bank, that such scheme and plan as set forth in this petition had been carried out between the defendants. The same was not discovered until upon the failure of said bank, and close investigation, and the admissions of said Allen revealed the same." Witham remained an officer and director of the bank until December, 1900, and Allen was an officer and director thereof until the time of its failure. There are due to the depositors of the bank $16,000, and all the available assets of the bank have been collected. "So it is necessary to recall said entire $11,400 with interest to pay the same."

The defendants objected to the allowance of this amendment, upon various grounds, not necessary to be stated here, which the court overruled. After the amendment had been allowed, plaintiffs "moved to strike the names of all the plaintiffs in said suit and

45

insert in lieu thereof the name of C. E. McGregor, receiver for the Bank of Warrenton." To this motion defendants "excepted upon the ground that it was adding a new and distinct party plaintiff, and upon the ground that, under the order appointing McGregor receiver, he did not have authority to prosecute the suit." The court overruled this objection, and passed an order striking the names of all of the original plaintiffs, and making the receiver the sole plaintiff in the case. Then, upon the hearing of the demurrer, the court sustained the same and dismissed the case. McGregor, the receiver, filed a bill of exceptions complaining of this last-mentioned ruling; and the defendants thereupon filed a cross-bill complaining of the above-indicated rulings as to the amendments to the petition, allowed over their objections.

*S. H. Sibley,* and *L. D. McGregor,* for plaintiff.

*Howard Van Epps, McWhorter, Strickland & Green,* and *E. P. Davis,* for defendants.

Fish, C. J. (After stating the facts.)

1. A motion was made in this court, by the plaintiff in the main bill of exceptions, to dismiss the cross-bill of exceptions, upon the ground that the original plaintiffs in the court below had not been served with the cross-bill, nor had service been acknowledged by or for them. We will dispose of this motion before passing upon the questions presented by the main bill, as we are of opinion that this motion must be sustained, and the dismissal of the cross-bill will, to some extent, simplify the discussion of the questions arising under the main bill, as to whether the petition as amended set forth a cause of action. For with the dismissal of the cross-bill the petition will stand here, as it finally did in the court below, as one brought originally by the receiver in behalf of the bank, so that when we come to pass upon the ground of demurrer alleging no cause of action, we will only have to determine whether the amended petition showed that the receiver had a cause of action against the defendants, and need not consider whether the original plaintiffs had any cause of action against them. The cross-bill of exceptions does not appear to have been formally served upon any one, but upon it there is the following acknowledgment of service: "I acknowledge due and legal service of the foregoing cross-bill of exceptions, waive copy, and further service. This Feb. 5, 1906. L. D McGregor & S. H. Sibley, Atty. for Plaintiff." It appears from

the record that in the court below these attorneys represented, in this litigation, all of the original plaintiffs, as well as McGregor, the receiver. The cross-bill assigns error upon the allowance of the amendment to the allegations of the original petition, and also upon the order of the court striking the original plaintiffs from the petition and substituting for them the receiver as sole plaintiff. It appears from the cross-bill that each of these rulings was made upon the motion of the original plaintiffs; but who such plaintiffs were, other than J. A. Anderson, does not appear in the cross-bill. It has been many times held that it should unequivocally appear in a bill of exceptions who are the parties thereto, and that an acknowledgment of service thereof does not relate to or bind any person not actually named or sufficiently designated therein as a defendant in error, when the acknowledgment is entered. *Greene* v. *Barron,* 119 *Ga.* 901, and cit. In addition to this, it will be observed, that the attorneys whose names are signed to the acknowledgment of service acknowledge service as "Atty. for Plaintiff;" and that at the time they made this acknowledgment the receiver was the only plaintiff, the original plaintiffs having been stricken from the case, and he having been substituted in their stead. There was also only this one plaintiff in the main bill of exceptions. So that aside from the rule that an acknowledgment of service of a bill of exceptions relates only to the parties named or sufficiently designated in such bill, it can not be said that the acknowledgment itself shows an intention, on the part of the attorneys making it, to acknowledge service for all of the original plaintiffs, as well as the receiver. A doubtful or uncertain acknowledgment of service is no substitute for the service which the law requires. In order for an acknowledgment of service to take the place of the service required by law, it must affirmatively show that service was acknowledged by the party himself, or by his attorney for him. For these reasons the motion to dismiss the cross-bill is sustained.

2. The main trouble which we have encountered in this case has been to correctly construe the imperfectly drawn and somewhat confused pleadings of the plaintiff. The difficulty in construction arose from the fact that while the effect of the original petition was to charge the defendants with the embezzlement of $11,400 of the funds of the bank, the amendment thereto described the trans-

action by which Allen obtained this amount of the bank's money, to use for the benefit of himself and Witham, as a "loan," made "on no other security than the hypothecation of [the] stock" which he had purchased from Witham, and referred to "the uncollectible paper of said Allen" as having been left "in lieu" of the money of the bank which he obtained and used; and charged that "the loan to said Allen of an amount exceeding half the capital stock of said bank," on such security, was contrary to law. So the question of construction has been, whether the amendment adhered to the cause of action originally set forth, or sought to hold the defendants liable, as officers and directors of the bank, for a loss sustained by the bank by reason of a loan recklessly and improvidently made, or made in violation of statutory law regulating loans made by banks. While the original petition was unskillfully drawn, it evidently set forth a cause of action in favor of the bank, or of one authorized to institute suit in its behalf. Whether the original petition showed a right of action in the plaintiffs who brought the suit, or in any of them, is another question, with which we are not now concerned. The question with which we are dealing is, did the amended petition set forth a cause of action in the receiver of the bank, who was the sole plaintiff when the demurrer was passed upon? It is perfectly clear that if, as alleged in the original petition, the defendants fraudulently appropriated to their own use the funds of the bank and it thereby sustained a loss, they would be liable to the bank for the amount of the loss sustained. This is too clear for discussion. Did the amendment change the cause of action set forth in the original petition? We think not. The amendment and the original petition are to be construed together, and so construing them, we think that the purport of the petition as amended is, that the defendants, for the purpose of defrauding the bank, entered into the scheme described in the original petition, and, in pursuance of this scheme, misappropriated the funds of the bank under the guise of a loan by the bank to Allen. In other words, we construe the language of the amendment descriptive of the manner in which Allen procured the money of the bank, for the use of himself and Witham, as intended to merely describe the method which the defendants adopted as a cover for the alleged misappropriation of the bank's funds; that is, that Allen, either as cashier or as president of the bank, went through

the form of lending the money for the bank to himself, or that Witham and Allen undertook, as officers of the bank, to lend its funds to Allen.   We do not think that the amendment, when considered in connection with the original petition, can be construed to mean that a loan was regularly, though unlawfully, made to Allen by the bank, acting through its board of directors.   In our opinion it is to be taken as merely alleging and describing a subterfuge to which the defendants resorted for the purpose of carrying out their alleged scheme to misappropriate the money of the bank. It is not clear from the amended petition whether Allen was president, or cashier, of the bank at the time he is alleged to have used its money for the benefit of himself and Witham.   It matters not, however, whether he had then succeeded Witham as president or was still cashier.   The cashier, whatever may have been his general authority as to making loans, could not bind the bank by lending its money to himself.   He could not represent his principal in lending the latter's money to himself.   1 Morse, Banks and Banking, §169, p. 386; *Savannah Bank* v. *Hartridge,* 73 *Ga.* 223; *Merchants National Bank* v. *Demere,* 92 *Ga.* 735.   Nor could the president of the bank, even if clothed with general authority to lend its money, bind it by lending its funds to himself, or by lending them to the cashier, when the latter knew that the loan was made for the president's own benefit.   And certainly if, as appears from the petition as amended, the "loan" was made in pursuance, and as the culmination, of a scheme between the president and the cashier to unlawfully appropriate the money of the bank for their mutual benefit, the transaction would not bind the bank, and they would both be liable for any loss which it thereby sustained.   It follows that the amended petition was sufficient to withstand the ground of the demurrer which alleged that it set forth no cause of action.

3. It did not appear from the petition as amended that the cause of action was barred by the statute of limitations when the suit was brought.   While it was alleged in the original petition that the fraudulent scheme between the president and cashier to misappropriate the funds of the bank was concocted in June, 1898, from the amendment to the petition it appears that the funds of the bank were not, in pursuance of this scheme, actually misappropriated by the defendants until June, 1899.   The original pe-

tition was filed on March 13, 1903, which was less than four years from the time when the misappropriation of the funds of the bank is alleged to have occurred. So the statutory bar applicable to actions of this kind had not attached when the suit was brought. Besides, so far as the defendant Witham is concerned, the amendment, in effect, alleged that the directors and stockholders of the bank did not know and could not, in the exercise of ordinary diligence, have known, that its assets "had been indirectly abstracted" for his benefit by Allen, in accordance with the alleged scheme between them, until after the failure of the bank, which is alleged to have occurred in February, 1902.

*Judgment, on main bill of exceptions, reversed; cross-bill dismissed. All the Justices concur.*