Wood, C. J.
The counsel for the prosecution insist that the state is entitled to judgment on this verdict, as a matter of course, on the first count in the information, because the facts are found by the jury substantially as they are averred. In most cases which occur, such a position could not well be successfully answered; for the allegata should, and usually do, when traversed and found to be true, constitute a good basis for a legal judgment. If such, however, be not the case, in civil actions even, the judgment will be arrested ; and in favor of a defendant, as strict rules, at least, should be applied, in what may bo termed a quasi criminal prosecution.
On this count, it will be seen, no facts are found by the jury, but what are expressly admitted by the plea. The issue, therefore, is upon the application of the law, and needed .not the intervention of a jury.
But do the facts, either admitted or found, constitute a misuser of the privileges or franchises of this corporation ? To determine this, it is necessary to look to the act by which it was created, and still continues to exist. Section 4, 29 Local L. 175, provides that it shall be lawful for said company to vest any part of its capital stock, moneys, funds, or other property, in any public stocks or funded debt, created or to be created by any law of this state ; and the same to sell and transfer at pleasure, and again to invest the same, or any part thereof, in such stocks or funds, or otherwise, whenever and so often as said company may deem it expedient; or may loan the same, or any part thereof, to individuals or corporations, on real or personal security, for such period of time, and *10, 11 upon such terms, and under such restrictions, as the directors of said company, for the time being, shall deem most expedient: Provided, that it shall not be lawful for said corporation to engarro *in the business of banking ; nor shall said company make, issue, or emit any bills of credit, as a circulating medium of trade or exchange; and, provided, also, that the capital stock of said, company shall not exceed §50,000.
It is not a question for us, whether the powers conferred by this section are the result of wise or unwise legislation. The privileges and franchises granted, are extensive in the extreme, and but feebly guarded from misapplication and abuse; and it should have been foreseen by the legislature which conferred these extraordinary powers, that corporations, like individuals, would sometimes apply their means to the acquisition of gains beyond what the ordinary sense of mankind would consider strictly justifiable or purely moral.
But had this defendant the power to loan money at twelve per cent, per annum, and to purchase bonds, notes, and other securities at sixteen per cent, discount, as found by the jury?
The charter is the law of the case. If none of its provisions have been violated, it is difficult to find any legitimate ground to demand its surrender. The defendant, not by implication or inference, but by express grant, may invest any part of the capital stock'in stocks or funds, or otherwise, whenever and so often as is doomed expedient. “ Otherwise,” would seem to indicate, in any other lawful manner. It may, therefore, invest in bonds and notes, and by discounting them ; and, as the company is restricted to no rate of discount, it is by no moans a violation of its charter, if it make a good bargain. By the charter, it may loan money to individuals or corporations, on real or personal security, for such period of time, and upon such terms as the directors deem expedient. The rate of interest is not restricted. The charter, then, is not violated by the reception of twelve or fifty per cent, on the loans of this company. An individual may contract for any rate of interest under the general law; but the law will coerce the payment of six per cent, per annum only; but the contract is no violation of law, because it is not prohibited. An individual may, for the same ^reason, receive any rate of interest. It is no violation of law, and when paid, it can not be recovered back.
A corporation, unrestrained, may occupy the same ground. The *12 rato of interest demanded or received, though it may be so exorbitant as to shock the moral sense of the community, is no violation of its charter, unless restrained by it.
We incline to the opinion, however, that this charter confers the power to bargain for any rate of interest; and, if so, any rate of interest agreed upon could be recovered by law.
The persons to whom loans may be made, are described; the kind of security and the period of time is provided for, and loans are to be upon “such terms," as the directors deem expedient. By the words, “ upon such terms," must, probably, mean to intend such rate of interest; for, as the persons to whom loans may be made, the kind of security and length of time for which made, are all enumerated, it is difficult to imagine what else could have been designed by the words “ upon such terms,” unless to fix the rate of interest by agreement. But if such were not the object of this legislation, there is nothing averred in this first count which can be said to be legally a misapplication, abuse, or misuser of the franchises granted; and, consequently, no legal judgment of ouster can be predicated thereon, although such averments are found by the jury to be true.
The facts averred in the second count are, by no means, found by the jury, in a legal sense, at least, although insurance was evidently one of the objects of the company, and provided for in section 2 of the act. The jury found one existing insurance, one refusal, because extra hazardous; but that the defendant was always ready and willing to insure at reasonable rates. The law by no means requires this defendant, nolens volens, to insure property or forfeit its charter for non-user ; but applications must be made and refused, at reasonable rates, and -without excuse.
The third count of the information, in substance, charges upon the defendant a usurpation of the franchises of banking, and %peeifios, with minuteness, the acts done and the usurpations relied upon, as within the proviso of section 4, and violations of the charter.
The finding of the jury does not, however, appear to us to square exactly with the allegations in this count. The jury say the defendant has dealt as a savings bank or institution, receiving sma'l deposits from children and others, to the amount of some $300 in all, but have received no deposits from merchants or traders; nor *13 is it found a single certificate of deposit was given by the company.
It does not appear to us this finding is within the prohibition against banking; and, if not, it is a lawful pursuit, in which a corporation, as well as an individual, may engage ; and it is well said by the defendant that, although receiving deposits is a part of the business of banks, it is no exclusive privilege of theirs, nor is the discounting of notes.
All persons in Ohio, artificial as well as natural, may pursue the business of banking, with the single exception of the issuing of notes for circulation as money. This is the mischief the legislature have sought from time to time to remedy ; it is the only exclusive, and the principal franchise, except its life, conferred upon a bank. It is against the issue and circulation of notes, as currency, that our penal statutes have, without exception, it is believed, been directed from 1816 to the present day. These deposits in savings institutions, however, have but little semblance to bank deposits. In general bank deposits no interest is paid by the bank, and the money is repaid on demand. In savings banks, the deposits, though called such, aro strictly loans, on which interest is paid, and are repaid only on express and specific notice.
We have, therefore, come to the conclusion, that the finding of the jury on this count, does not lay the foundation for judgment against the defendant, but that judgment on all the counts must be entered in his favor.