## BRUNSWICK–BALKE–COLLENDER CO., RESPONDENT, *v.* HIGGINS, APPELLANT.

### (No. 3,781.)

(Submitted June 6, 1917. Decided June 16, 1917.)

[165 Pac. 1109.]

*Pledges—Definition—What does not Constitute.*

Pledge—Definition.
1. The elements made essential by sections 5774 and 5775, Revised Codes, to the creation of a contract of pledge are (1) a delivery of personal property by the owner to the pledgee (2) under an agreement, express or implied, and with the intention by both parties, that the pledgee shall hold it as security for the payment of a debt or the performance of some obligation.

Same—What does not Constitute.
2. Where personal property (bowling-alley and billiard-hall fixtures), bought on credit and not fully paid for, had been left by the purchaser on rented premises, and later resold by their original owner, with the consent of the first buyer and under an agreement with the landlord that out of the amount received on the resale the latter should be paid the rent then due him from the first buyer, the goods being turned over to the new buyers for the purpose of conducting a bowling-alley business and not with any idea that they should hold them as security for the overdue rent, the transaction did not constitute a pledge as defined in paragraph 1, *supra.*

[As to definition and nature of pledge, see note in 49 **Am. Dec.** 730.]

*Appeal from District Court, Powell County; Geo. B. Winston, Judge.*

ACTION by the Brunswick-Balke-Collender Company against W. I. Higgins. Judgment for plaintiff. Defendant appeals from the judgment and order denying him a new trial. Affirmed.

*Mr. S. P. Wilson,* for Appellant, submitted a brief and argued the cause orally.

*Mr. W. E. Keeley,* for Respondent, submitted a brief.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action in claim and delivery. The trial was by the court without a jury. Plaintiff had judgment. Defendant has ap-

pealed from the judgment and an order denying his motion for a new trial. The subject of the controversy is the right to the possession of property described in the complaint as "two bowling-alleys complete with equipment, said equipment consisting of bowling-pins, bowling-balls, electric-light fixtures, bumpers, score-boards, floor lumber, railings, screws, gutters and other property appurtenant to the successful use of said bowling-alleys."

The complaint is in the usual form, alleging ownership in plaintiff and its right to immediate possession. The answer, admitting the general ownership of the property in plaintiff, put in issue the right of possession. The evidence does not present any substantial conflict. The merit of the appeals, therefore, is to be determined by a solution of the inquiry whether, upon the admitted facts appearing below, the defendant was entitled to retain possession of the property by virtue of a lien in his favor arising out of an agreement between him and the agents of plaintiff. The facts are these:

The defendant resides in Deer Lodge, Powell county. The plaintiff, a Montana corporation, conducts in the city of Butte the business of dealing in billiard and pool tables, bowling-alleys and other similar goods. On March 9, 1912, through one of its agents, it sold under a conditional sale contract the property described in the complaint to J. J. Arndt at Deer Lodge. The price agreed upon was $950, of which $500 was to be paid in cash, and the balance in ten equal monthly installments with interest. The contract was in writing and filed with the county clerk, as required by the statute (Laws of 1911, Chap. 52). The property was installed in a building owned by the defendant, then held under a lease by Arndt for the purpose of conducting a bowling-alley, at a monthly rental of $30. Arndt thereafter made payments upon the balance of the purchase price, until it had been reduced to $275. The business not proving profitable, he had fallen in arrear in the payment of rent for the building to the amount of $125. Early in 1913 he surrendered the building to defendant, leaving the property

therein as it was originally installed.  This was the condition of affairs on May 16, 1913.  In the meantime the defendant, not knowing that plaintiff held the title, was about to attach the property to enforce payment of the arrears of rent.  The plaintiff did not desire to have the property taken from the building which would be the result if proceedings were begun. In conjunction with the defendant, it obtained the consent of Arndt to sell it upon such terms as would enable it to realize an amount sufficient to discharge the balance of the purchase price and also the arrears of rent due defendant.  Through D. J. Harrington, a salesman, on the date last mentioned it effected a sale to George Gallagher and Walter Harnack, who undertook to conduct a bowling-alley in the same building under the firm name of Gallagher & Harnack.  The price agreed upon was $400, of which $50 was to be paid in cash and the balance in ten equal monthly installments with interest, the contract being in the same form as that made with Arndt.  Gallagher & Harnack were then permitted to take possession of the building and conduct the business.  The business proving unprofitable they defaulted in their payments under their contract with plaintiff and abandoned the building, leaving the property there.  The sum of $400 was fixed as the price to Gallagher & Harnack to cover the amounts due both plaintiff and the defendant.  This was so fixed because the defendant objected to allowing Gallagher & Harnack to occupy the building and to continue the business therein unless the agent of plaintiff would assume for it the obligation to pay the rent due to defendant from Arndt.  There is some uncertainty in the evidence as to whether the negotiations were conducted for the plaintiff with Arndt, Gallagher & Harnack and the defendant by Harrington, the salesman, or by James M. Reynolds, who was then the general manager of plaintiff.  The evidence as a whole, however, justifies the inference that they were conducted by Harrington, and the result approved and confirmed by Reynolds.  The following excerpt from the testimony of defendant shows what the result was: "Mr. Reynolds and I visited Mr. Arndt in regard to the alleys, and Mr.

Arndt said that he could make no further payments and for us to take them and get our money out of them for the Brunswick-Balke-Collender people and myself, and we agreed to do that and Mr. Reynolds agreed to do that. Arndt turned them over to Reynolds and myself, Reynolds acting for the Brunswick-Balke people. This was over the shops, in the boiler-shop, I think, across the river. The exact date I cannot remember, but after Mr. Arndt had turned the building over to me and I had locked it. The agreement between me and Mr. Reynolds was that he would sell those alleys and Mr. Reynolds for the company was to retain a balance that was due them on the purchase price and I was to get my money for the rent; that was the agreement. In the meantime the alleys were to remain in my building. And he did not want them taken up, for the reason that he thought they would [be] more valuable as they were, that he could sell them better while they were down. This never was paid to me, nor any part of it." In another place in his testimony he stated that he relinquished his purpose to enforce payment of the rent due from Arndt by attachment proceedings, because of the agreement by Reynolds to protect him in the payment of it. He testified in effect, also, that he was to receive payment at once from plaintiff, and that, though he thereafter made several demands by letter and by telephone, payment was never made to him notwithstanding repeated promises. There was no agreement as to how long the property was to remain in the building, nor any agreement that Gallagher & Harnack were to hold the property for the benefit of defendant. It does not appear distinctly whether Arndt was released from his obligation to pay defendant. For present purposes it may be assumed that he was.

It was argued by counsel that though the agreement was oral and informal, it created a pledge of the property to defendant to secure the payment of the rent due from Arndt, and hence that defendant was entitled to retain possession until

plaintiff had made or tendered payment. This contention is without foundation in the facts.

"Pledge is a deposit of personal property by way of security [1] for the performance of another's act." (Rev. Codes, sec. 5774.) "Every contract by which the possession of personal property is transferred, as security only, is to be deemed a pledge." (Sec. 5775.) The elements here made essential to the creation of a contract of pledge are (1) a delivery of personal property by the owner to the pledgee (2) under an agreement that the latter shall hold it as security for the payment of a debt or the performance of some obligation. (*Averill Machinery Co.* v. *Bain,* 50 Mont. 512, 148 Pac. 334.) The agreement need not be in writing. (31 Cyc. 796.) It may be express or implied, but the property must be delivered and held in possession by the pledgee as security to which he may resort in order to enforce a discharge of the debt or obligation assumed by the pledgor. (Rev. Codes, sec. 5788.) Whether the agreement is express or implied, the intention of the parties must be clear. In other words, the transfer must have been made with the intention by both parties that the property is to be held as a security. In 31 Cyc., at page 787, the elements of a pledge are stated thus: "The three elements necessary to constitute a contract one of pledge are: (1) The possession of the pledged property must pass from the pledgor to the pledgee or to some one for him; (2) the legal title to the pledged property must remain in the pledgor; (3) the pledgee must have a lien on the property for the payment of a debt or performance of an obligation due him by the pledgee or some other person. And every contract by which the possession of personal property is transferred as security only is to be deemed a pledge. But the agreement that property is to be held as a pledge must be clearly expressed or implied, and a mere loose understanding, or statements by one party to which the other does not assent, are not sufficient to constitute a contract of pledge." Mr. Jones, in his work on Collateral Securities, defines a pledge thus: "A pledge may be defined to be a deposit of personal property as

security, with an implied power of sale upon default.'' (Jones on Collateral Securities, 3d ed., sec. 1). To the same effect is the definition by Mr. Story (Story on Bailments, 9th ed., sec. 286).

Applying these definitions to the agreement between the [2] plaintiff and the defendant and the disposition of the property in pursuance of it, we find that the result was not a pledge. In the first place, though at the time the agreement was made the property was technically in the possession of the defendant, it was delivered to Gallagher & Harnack when they began to occupy the building, not to be held by them as security for the defendant, but to be used in the conduct of their own business. They were not parties to the agreement between plaintiff and defendant, and so far as either was concerned, they were at liberty at any time to pay the purchase price and remove the property. Their possession was therefore not that of the defendant nor was it held for him. The defendant having expressly agreed that the plaintiff should effect a sale for the purpose of realizing enough money to pay the balance due it and to defendant, the conclusion is necessary that the plaintiff had the right to sell and deliver possession to the purchaser as it did. In the second place, according to defendant's own testimony, plaintiff promised to pay the amount due him at the time possession was delivered to Gallagher & Harnack. Thus he let go of the possession upon the faith of this promise, and chose to look solely to it for the amount due him. True, the property was to remain in the building, but the stipulation that the plaintiff was to effect the sale and retain a balance of the selling price to pay the Arndt rent is conclusive proof that the security he looked to was the promise of plaintiff and not the property. The stipulation that the property was not to be removed was clearly for the sole benefit of the plaintiff. It was the consideration upon which it assumed to become bound to pay the Arndt rent. When it failed to make payment, defendant became entitled only to bring action against it as for a breach of contract to pay money.

We think the trial court reached the correct conclusion. The judgment and order are therefore affirmed.

*Affirmed.*

Mr. Justice Sanner and Mr. Justice Holloway concur.