FIRST NATIONAL BANK OF BLAKELY *v.* HATTAWAY.

No. 8158. MAY 14, 1931.

*A. H. Gray* and *Pottle, Hardwick, Farkas & Cobb,* for plaintiff in error.

*E. R. King* and *H. A. Wilkinson,* contra.

BECK, P. J. J. F. Hattaway brought suit against First National Bank of Blakely, alleging in substance as follows: Defendant has damaged petitioner in the sum of $10,000, by reason of the following facts: In the fall of 1920 petitioner delivered to defendant fifty bales of cotton to secure certain indebtedness due by the plaintiff to defendant. The indebtedness was renewed from time to time, and is now represented by two promissory notes, both dated April 3, 1922, and due September 28, 1922, for the principal sum of $4,046.21 and $1,788.81, or a total of $5,835.02, with interest thereon at the rate of 8 per cent. per annum from maturity. By amendment, in response to special demurrer, copies of the notes were attached to the petition. In each one of the notes the cotton is described as being located in a certain warehouse. Each of the notes has the following stipulation: "I represent that I am sole and lawful owner, and have full power and authority to pledge such collateral, and I hereby constitute the president, vice-president, and cashier of said corporation, jointly and severally, my attorney or attorneys to collect, sell, or otherwise dispose of the whole or any portion of said collateral, either at public or private sale, and without notice [to] me of an intention to sell, in case of the non-performance of this contract, applying the proceeds to the payment of this note, including interest, and accounting to me for the surplus, if any; and at any such sales or sale the said corporation or any officer or agent thereof may be the purchaser in whole or in part. In case of deficiency, I hereby promise to pay said bank the

amount thereof forthwith, after such sale, with interest at the same rate as above named." The note recited that the collateral was "deposited with said bank to secure the prompt payment of this note or any other liability of myself to said bank, due or to become due, or that may be hereafter contracted." In addition to the cotton, on June 21, 1922, to further secure the notes, Miss Leona Hattaway conveyed certain lands to the bank by security deed containing a power of sale.

After maturity of the notes, defendant was by plaintiff instructed to sell the cotton pledged whenever the price thereof would pay the notes in question, but this it failed to do; and thereafter, on or about November 15, 1923, petitioner again instructed and demanded defendant to sell said cotton and discharge the notes. It is averred that the cotton was, on the date of the demand, of the market value of 33 cents per pound; also that on the date of the maturity of the notes or shortly thereafter and subsequently to petitioner's instruction to sell the same, the cotton was of the market value of 37 cents per pound where located, from which price it steadily declined for a period of a year or more, and until the same was sold by the defendant. Notwithstanding the plaintiff's several demands and the decline in price, defendant failed and refused to sell the cotton for a period of two years and six months after the maturity of the notes, but did, on March 3, 1925, sell the same for 24-15/16 cents per pound, a total received therefor of $5,892.84. Petitioner alleges that the cotton, on or about October 1, 1923, and after the date of the first demand to sell, was of the market value of 37 cents per pound, or a total of $8,920.33; that the difference between this amount and the amount due on the notes was $2,618.55, which the plaintiff alleges he is entitled to recover. On or about November 15, 1923, the date of the second demand, the cotton was worth 33 cents per pound, and the difference between its value at that time and the amount due on the notes was $1,595.80. It is alleged that the defendant's failure, refusal, and omission to sell the cotton under the conditions stated was wrongful, negligent, and injurious to petitioner, whereby he sustained loss in the sum aforesaid; that defendant did not exercise ordinary diligence in making a sale of said cotton when authorized, and was grossly negligent in omitting to sell the cotton for a period of at least a year and a half, after the request to do so and while

the same was declining in price; that the cotton was finally sold without notice to petitioner; that the defendant has not, though requested so to do, accounted to petitioner for the proceeds thereof; and that defendant should account to petitioner, not only for the funds received, but for the value of the cotton as alleged. Plaintiff prays for a judgment for the value of the cotton on November 1, 1923, at the price of 37 cents per pound, with interest, and that the notes and mortgage securing the same be delivered up and canceled.

To this petition the defendant filed both a general demurrer and special demurrers. After amendment of the petition to meet one ground of the special demurrer, the judge overruled all the demurrers, and the defendant excepted.

The petition shows on its face that the proceeds of the cotton at the time it was sold on March 3, 1925, were not sufficient to pay the principal and interest due on the notes held by the bank. It is alleged that about October 1, 1923, and again on November 15, 1923, the plaintiff demanded that the bank sell the cotton which had been pledged, and that if either of these demands had been complied with the proceeds at the then market value would have been more than sufficient to pay the notes in full. And among other questions raised by the general demurrer is, is the bank liable in damages for failure to exercise ordinary care in dealing with the collateral because it failed to sell the cotton at the time the plaintiff made the demand that it be sold?

Neither at common law nor under the statutes of this State, in the absence of contract, is the holder of collateral bound to sell it, though he may have the right to sell it, under certain conditions, by giving notice as required by the statute. As a matter of law, a pledge of chattels is a mere security for the obligation that the pledgor would pay the debt. The pledgee may sell the collateral in order to protect himself, if he deems it wise to do so, after compliance with the statute as to notice, etc., or in the exercise of special contractual power. But he is not obliged to sell the collateral to satisfy the debt in whole or in part, even upon the demand of the pledgor. The pledgee may look solely to the promisor, and may proceed against him on his promise, without exhausting the collateral. The creditor may sue on the note and obtain an ordinary common-law judgment, without exhausting the security. The

property pledged, the chattel in the present case, is merely security for the debt. Where the creditor holds a promissory note given to him by his debtor and holds other promissory notes or other collateral for the principal obligation, he is bound to use ordinary diligence in collecting the collateral; but as regards other pledges, such as cotton, stocks of corporations, and the like, the obligation of the creditor is to exercise ordinary care in the preservation of the collateral, to the end that it may be delivered to the debtor when he pays the debt in substantially as good a condition as it was in when received. "A pledge, or pawn, is property deposited with another as security for the payment of a debt." Code, § 3528. "The pawnee is bound for ordinary care and diligence." § 3535. The doctrine is thus stated in 21 R. C. L. 689, § 49: "It is the well-settled general rule that a pledgee, though entitled to do so, is not bound to sell the pledge at the maturity of the debt, but may sell or not at his option, and in the absence of any agreement requiring the pledgee of property to sell it on the maturity of the debt he can not be held liable for a depreciation in the value of the property occurring after the maturity of the debt secured by the pledge. The pledgor having the right of redemption, he must redeem and sell the pledged property himself if he wishes to avoid loss by depreciation." And the rule has also been stated in this language: "Where there is no contract varying the powers and duties of the parties, as a general rule the pledgor can not make it the duty of the pledgee to sell by directing or requesting him to do so." 49 C. J. 997 and cit. In Cooper v. Simpson, 41 Minn. 46 (42 N. W. 601, 4 L. R. A. 194, 16 Am. St. R. 667), it was held: "A contract or pledge may make it the duty of the pledgee to sell within a specified time, and his failure to do so is then such breach of duty as will render him answerable to the pledgor. In the absence of such contract, the pledgor can not make it the duty of the pledgee to sell by requesting or directing him to do so." In the case of Rozet v. McClellan, 48 Ill. 345, 95 Am. D. 551, the Supreme Court of Illinois used the following language: "The question then presents itself, whether appellee was bound to sell this stock on the occurrence of the default, and on failing to do so, whether he has rendered himself liable to account for the loss? We have been referred to no authority announcing such a rule, nor have we been able to find any case that

goes that length. The cases of Slevin *v.* Morrow, 4 Ind. 425, Roberts *v.* Thompson, 14 Ohio St. 7 [82 Am. D. 465], and Jennison *v.* Parker, 7 Mich. 355, cited in appellant's brief, hold the doctrine that the pledgee is bound to use reasonable diligence in the collection of negotiable paper pledged as collateral security; but do not hold that it is the duty of the pledgee to sell property thus pawned. And as the rule is firmly established that the pledgee must make a demand, and give notice before he can sell the pledge and bar the redemption, it would seem to follow that he was not bound to sell. And under the ancient common law, it required a judicial proceeding to authorize the sale, or at least to cut off the right of redemption: Story on Bailments, p. 312, § 310. The mortgagee, by delaying to sell the property upon which he holds a mortgage does not incur liability for loss by its depreciation, and the pledgee, not being required to sell, should not be subjected to the loss. The pledgor having the general property in the pledge may sell it, and compel its restoration upon paying the money to redeem. Had appellant found a purchaser of the stock, who had tendered the amount of the note, and appellee had refused to deliver it to him as the purchaser, on the order of appellant, then a very different question would have been presented for our consideration. In this, appellant has presented no defense." In *Colquitt* v. *Stultz, 65 Ga.* 305, it was said: "One who receives collateral security is bound to the use of reasonable diligence in connection therewith. If the collateral be promissory notes or like evidences of debt, he is bound to use ordinary diligence to collect them. But where stock, worth about par, was deposited as collateral security, the creditor was not compelled, on failure of the debtors to pay the debt, to sell the collateral; although he had the option to do so, in the manner provided by the Code [1873]; § 2140. His not selling, although he knew that the debtors had failed in business, and the subsequent depreciation of the stock, constituted no defense to an action on the indebtedness, it not appearing that the debtors took any steps to secure a sale." And again, in *Napier* v. *Central Georgia Bank, 68 Ga.* 637, it was held: "Where shares of stock were deposited with a bank as collateral security for the payment of notes, with power in the creditor to sell such stock and apply the proceeds to the payment of the notes if they were not paid promptly at maturity, without further notice to the debtor, a mere failure

on the part of the bank to sell the stock at the maturity of the notes constituted no defense to a suit thereon, and gave the defendant no right to damages." See also *Savannah Bank & Trust Co.* v. *Hurtridge*, 73 *Ga.* 223.

In view of these authorities, we are of the opinion that the general demurrer should have been sustained, and the court erred in overruling it. *Judgment reversed. All the Justices concur.*