## 45548. MOTOR CONTRACT COMPANY OF ATLANTA v. SAWYER.

WHITMAN, Judge. One Ragsdale put his car up for sale and placed an advertisement in a local paper. Sawyer decided to buy it and contacted Motor Contract about financing. Sawyer and Ragsdale went to Motor Contract's office. Motor Contract delivered a check to Ragsdale payable to Ragsdale and Peoples American Bank for their interests in the car. Sawyer executed an agreement in which he promised to pay the amount of the loan in 36 monthly instalments. The agreement also gave Motor Contract a security interest in the car to secure payment of the indebtedness.

Sawyer defaulted on the note. Motor Contract took possession of the car and notified Sawyer of that event and of its intentions to sell the car. Motor Contract then brought suit against Sawyer for the deficiency remaining after applying the proceeds of the sale against the indebtedness.

The trial judge, sitting without a jury, after hearing the evidence presented by both sides, found for defendant Sawyer. Motor Contract has appealed from the judgment, enumerating the same as error.

Both parties have stipulated that the question to be determined is whether or not Motor Contract gave Sawyer a proper notice, having regard to the law applicable to the transaction involved, to dispose of the collateral and hold Sawyer liable for the deficiency. *Held:*

1. The Motor Vehicle Sales Finance Act (Ga. L. 1967, p. 674 et seq.; *Code Ann. Ch.* 96-10) is contended by Sawyer to be applicable. We disagree. This Act governs motor vehicle sales between "retail sellers" and "retail buyers" which result in "retail instalment contracts," i.e., contracts creating a purchase money security interest. The Act also governs a "sales finance company" (and can include a bank, trust company or industrial loan company) engaged in the business of purchasing retail instalment contracts from retail sellers. The present case did not involve the type of transaction to which the Motor Vehicle Sales Finance Act is addressed and the specifications regarding repossession notices contained therein are accordingly not applicable.

The transaction involved in the present case is governed by the Uniform Commercial Code, and the answer to the question presented is found in the "Default" provisions of Article 9 (Secured Transactions) of the Uniform Commercial Code. Therein is set forth the right of a secured party after a default to take possession of the collateral, to dispose of same, and further, unless otherwise agreed, to hold the debtor liable for any deficiency.

"Disposition of the collateral may be by public or private proceedings . . . Sale or other disposition may be . . . at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable . . . *[R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . .*" (Emphasis supplied.) *Code Ann.* § 109A-9—504 (3) (Ga. L. 1962, pp. 156, 422).

2. The notice given Sawyer reads in pertinent part as follows: "Because of your default in the payment of instalments on the contract . . . we have accelerated the maturity of the remaining principal balance . . . and there is now due and owing a balance of $2,876.18. This debt is secured by one 1968 Oldsmobile 442 2-Dr. Htp. No. 344878N66186, which we have repossessed and intend to sell in accordance with the Uniform Commercial Code at private sale on or after ten days from the date of the postmark shown on the envelope bearing this letter. The proceeds

of our sale of said property shall be applied first to the reasonable expenses of retaking, holding, preparing the property for sale and selling it, and attorney's fees and legal expenses incurred in connection with the sale, and then to the satisfaction of the indebtedness secured thereby. If the proceeds of our sale of said property are not sufficient to satisfy your indebtedness to us after being applied as aforesaid, then we intend to seek a judgment against you for the deficiency."

3. The question is now reduced to one of whether the notice given Sawyer satisfies the UCC. The notice was sent to Sawyer at the address given when he executed the security agreement. The evidence shows that the notice was sent on June 11, 1969, by certified mail, return receipt requested, and was received by Sawyer on June 13, 1969. Such *method* of notification was effective, satisfactory and reasonable. *Steelman v. Associates Discount Corp.*, 121 Ga. App. 649 (175 SE2d 62).

No complaint is made that the notification of intention to sell at a private sale 10 days after the postmark was unreasonable. Indeed, the security agreement executed by Sawyer provided for notification in the same manner prior to a private sale, but required only 5 days. Parties may agree between themselves upon standards (not manifestly unreasonable) by which the fulfillment of the rights and duties provided by the UCC in the event of default are to be measured. *Code Ann.* § 109A-9—501 (3) (Ga. L. 1962, pp. 156, 420).

Appellee argues that the notice was "not sufficient to reasonably notify appellee of his rights." We disagree. The notice was in accordance with the requirements of *Code Ann.* § 109A-9—504 (3), supra, and was not such as misled or prevented Sawyer from exercising his right of redemption under *Code Ann.* § 109A-9—506 (Ga. L. 1962, pp. 156, 425). Compare *Braswell v. American Nat. Bank,* 117 Ga. App. 699 (161 SE2d 420) where notice only of intention to sell without any notification of time was held not to be in compliance with the UCC; did preclude the purchaser or owner from exercising his right of redemption; and therefore prevented the recovery of the deficiency.

There was no contention or evidence that the sale was not bona fide or was a sham. The defense was that there could be no

recovery for the deficiency because the notice given was insufficient. We have found that the notice was sufficient.

The trial court erred in entering judgment for the defendant.

*Judgment reversed. Bell, C. J., and Quillian, J., concur.*

SUBMITTED SEPTEMBER 8, 1970—DECIDED JANUARY 25, 1971.

*Richard V. Karlberg, Jr.,* for appellant.

*Nancy S. Cheves, Michael H. Terry,* for appellee.