26603. SOUTHERN RAILWAY COMPANY v. INSURANCE COMPANY OF NORTH AMERICA et al.

24

Argued July 13, 1971—Decided September 8, 1971.

*Greene, Buckley, DeRieux & Jones, Alford B. Adams, III, Burt DeRieux,* for appellant.

*Long, Weinberg, Ansley & Wheeler, John E. Talmadge, Glenn E. Frick,* for appellees.

Mobley, Presiding Justice. Southern Railway Company, as defendant in an action brought against it by Insurance Company of North America, and third-party plaintiff in its complaint against Chattahoochee Brick Company, appealed from the following interlocutory rulings: The denial of

Southern Railway's motion to declare unconstitutional an amendment (Ga. L. 1970, pp. 441-442) to *Code* § 20-504; the denial of Southern Railway's motion for summary judgment against Insurance Company; the denial of Southern Railway's motion for summary judgment against the third-party defendant, Chattahoochee Brick; the sustaining of Chattahoochee Brick's motion for summary judgment against Southern Railway; and the sustaining of Insurance Company's motion to strike the fourth defense of the answer and certain language in the counterclaim of Southern Railway. The trial judge certified the rulings for immediate review.

The complaint of Insurance Company alleged that: It was the insurer of Chattahoochee Brick on August 29, 1966, when some railroad cars owned by Southern Railway struck property of Chattahoochee Brick. This occurrence was the result of the negligence of Southern Railway, its agents, servants, and employees. Insurance Company paid to Chattahoochee Brick $210,000 because of the property damage, and Chattahoochee Brick has assigned to Insurance Company its claim against Southern Railway as a result of this damage. Judgment in the sum of $210,000 was demanded.

Southern Railway's fourth defense to the complaint was that any action against it by the insurer of Chattahoochee Brick is barred because of quoted provisions in a contract entered into on September 9, 1964, between Southern Railway and Chattahoochee Brick.

In this contract Southern Railway consented to the construction and maintenance by Chattahoochee Brick of "an overhead conveyor above an industrial track and an unloading pit beneath said track, with a shed over said pit" at a designated location on a spur track of Southern Railway. These privileges were granted in consideration of covenants by Chattahoochee Brick, one of these being a covenant to indemnify Southern Railway from loss, injury, or damage in connection with the facilities, resulting from the negligence of Southern Railway or otherwise.

The trial judge held that the 1970 amendment (Ga. L. 1970, pp. 441-442) to *Code* § 20-504 made the indemnifi-

cation covenant void as against public policy.

■ When the case was argued in this court some discussion ensued as to the jurisdiction of this court. The record discloses that Southern Railway attacked the 1970 amendment to *Code* § 20-504 as being unconstitutional for specified reasons; the trial judge entered an order overruling this attack; and thereafter orders were entered giving effect to *Code* § 20-504 as amended.

Southern Railway enumerated as error the order overruling its constitutional attack. The case is therefore one in which the constitutionality of a law of this State is drawn in question, and is within the jurisdiction of this court. Constitution, Art. VI, Sec. II, Par. IV (*Code Ann.* § 2-3704); *First Nat. Bank of Atlanta v. State Hwy. Dept.*, 219 Ga. 144, 146 (132 SE2d 263).

■ *Code* § 20-504 provides that a contract which is against the policy of the law cannot be enforced, and gives illustrations of such contracts. The 1970 amendment (Ga. L. 1970, pp. 441-442) added the following paragraph to this Section: "A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building structure, appurtenances and appliances including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against public policy and is void and unenforceable; provided that this Section shall not affect the validity of any insurance contract, Workmen's Compensation or agreement issued by an admitted insuror."

Southern Railway asserted that this amendment violated the Constitutional prohibition against the passage of a retroactive law or law impairing the obligation of contracts (Constitution, Art. I, Sec. III, Par. II; *Code Ann.* § 2-302), and the due process clauses of the State and Federal Constitutions.

Prior to the passage of the 1970 amendment to *Code* § 20-504, it was not against the public policy of this State for a railroad to enter into a contract to allow another to construct facilities on a spur track of the railroad, and in the contract to relieve the railroad of any responsibility for injury, loss, or damage in connection with such facilities, even though caused by the railroad's negligence. *Blitch v. Central of Ga. R. Co.,* 122 Ga. 711 (50 SE 945); *Hearn v. Central of Ga. R. Co.,* 22 Ga. App. 1 (95 SE 368); *Dowman-Dozier Mfg. Co. v. Central of Ga. R. Co.,* 29 Ga. App. 187 (2) (114 SE 815).

The covenants assumed by Chattahoochee Brick constituted the entire consideration of the contract. The indemnification covenant was not the only covenant of the contract, but it was one of its substantial obligations. The ruling by the trial judge that the indemnification covenant is unenforceable because of the 1970 amendment to *Code* § 20-504 substantially impairs the obligations of the contract, and gives the amendment retroactive effect in the legal sense. *Ross v. Lettice,* 134 Ga. 866, 868 (68 SE 734, 137 ASR 281); *Williams Bros. Lumber Co. v. Anderson,* 210 Ga. 198, 204 (78 SE2d 612).

"Laws prescribe for the future. Unless a statute, either expressly or by necessary implication, shows that the General Assembly intended that it operate retroactively, it will be given only prospective application." *Anthony v. Penn,* 212 Ga. 292 (92 SE2d 14), and cases cited; *Bauer Internat. Corp. v. Cagles, Inc.,* 225 Ga. 684, 687 (171 SE2d 314).

There is no language in the 1970 amendment which expressly, or by necessary implication, shows that the General Assembly intended it to be applied retroactively to rights which had accrued under contracts of the nature described in the amendment. Insurance Company contends that the language in the proviso, referring to insurance contracts and Workmen's Compensation agreements, indicates that the amendment is intended to be applied to contracts in existence at the time of the effective date of the amendment. Even if this exemption proviso applies to both past

and future contracts, the language regarding exemptions would not imply an intention that retroactive effect should be given to the other provisions of the amendment.

Statutes are to be given constitutional effect if the language used will permit such construction. We therefore hold that the 1970 amendment to *Code* § 20-504 was not intended to, and does not, apply to contractual rights accruing prior to its enactment. The trial judge erred in applying this amendment to the contract of Southern Railway and Chattahoochee Brick, and striking the fourth defense of Southern Railway.

Giving the amendment prospective effect only, it is not subject to the constitutional attack made on it by Southern Railway, and we affirm the judgment overruling the constitutional attack.

■ The question made as to Southern Railway's motion for summary judgment against Insurance Company is whether the damage to the buildings and kilns of Chattahoochee Brick comes within the terms of the contract between Southern Railway and Chattahoochee Brick.

There is no material dispute in the evidence as to the occurrence of August 29, 1966, when the railroad cars of Southern Railway struck the buildings and kilns of Chattahoochee Brick. On the day before the occurrence Southern Railway delivered five railroad cars loaded with shale to Chattahoochee Brick. The lead car was placed over the Chattahoochee Brick pit (constructed pursuant to the contract of September 9, 1964) for unloading. The other four cars were placed at a distance of about 12 feet south of the lead car. The purpose in placing all of the cars where they were positioned was to allow them to be unloaded at the pit site. On August 29, 1966, while employees of Chattahoochee Brick were in the process of unloading these cars, certain of the cars became unbraked and rolled downgrade along the industrial spur track a distance in excess of 1,600 feet, and ultimately struck buildings and kilns of Chattahoochee Brick, thereby causing physical damage to these structures.

The covenant of indemnification relied on by Southern Railway recites that Chattahoochee Brick will "construct, maintain and use" the described facilities, "with full cognizance of the risk of . . . damage to persons or property which may be caused by or result from railroad operations upon the track crossing under said conveyor and shed and above said pit or in the vicinity of same, or which may accrue from or by reason of the construction, installation, maintenance or operation of said Facilities by Industry [Chattahoochee Brick] above and under said industrial track, or the use of the same by Industry as contemplated hereunder." Chattahoochee Brick agreed that: "Railroad shall have no responsibility in connection therewith, but that said Facilities shall be so placed, constructed, maintained and used solely at the risk of Industry, and Industry will indemnify and save harmless Railroad from and against any and all such loss, injury or damage, whether the same may result from the negligence of Railroad, or otherwise."

Insurance Company argues that the indemnification covenant was intended to cover only damages to Chattahoochee Brick's conveyor and unloading pit constructed above and beneath the railroad track, and that the covenant does not cover damages to facilities of Chattahoochee Brick which have no connection with the conveyor and pit, and are located in excess of 1,600 feet from them. Insurance Company emphasizes the language of the covenant stating that Chattahoochee Brick recognizes the risk of damage "which may be caused by or result from railroad operations upon the track crossing under said conveyor and shed and above said pit or in the vicinity of same." It should be noted, however, that this language is followed immediately by the words: "or which may accrue from or by reason of . . . the maintenance or operation of said Facilities by Industry above and under said industrial track, or the use of the same by Industry as contemplated hereunder."

The cars of Southern Railway were placed at the facilities constructed pursuant to the contract for the purpose of

unloading shale therefrom into the pit of Chattahoochee Brick. When the cars became unbraked (in some manner not disclosed by the evidence) and rolled into the buildings and kilns of Chattahoochee Brick, this was an occurrence accruing from the maintenance and operation of the facilities, or the use of the facilities, and it was covered by the indemnification covenant.

Insurance Company, as assignor of Chattahoochee Brick, therefore has no claim against Southern Railway for the damage done to Chattahoochee Brick, even if Southern Railway was negligent, since Southern Railway is released by contract from any liability which it might otherwise have.

The trial judge erred in denying Southern Railway's motion for summary judgment against Insurance Company.

■ In Southern Railway's answer to Insurance Company's complaint it set out a counterclaim for damages of $4,192.38, alleged to have been sustained by it because of the negligence of Chattahoochee Brick.

In the previous division we have ruled that summary judgment should have been granted to Southern Railway against Insurance Company. Since Insurance Company can not recover any amount from Southern Railway on its claim, the counterclaim of Southern Railway, based on the negligence of Chattahoochee Brick, can not be maintained against Insurance Company. We thus affirm the ruling denying Southern Railway's motion for summary judgment against Insurance Company on the issue of liability on the counterclaim.

■ In the third-party complaint filed by Southern Railway against Chattahoochee Brick, it was asserted that, if Southern Railway should be held liable to Insurance Company, it would be entitled to full indemnification from Chattahoochee Brick because of the provisions of the contract of September 9, 1964. Judgment was prayed against Chattahoochee Brick for any amount recovered by Insurance Company against Southern Railway, and for damages in the amount of $4,192.38.

(a) While the trial judge improperly held that the indemnification covenant of the contract was unenforceable, since we have held that, because of this covenant, Insurance Company can not recover damages from Southern Railway, there can be no recovery by Southern Railway from Chattahoochee Brick, as third-party defendant, as indemnification of the claim alleged by Insurance Company against Southern Railway.

(b) Third-party pleading does not allow a defendant to implead a third-party defendant to recover on a claim on which the third-party defendant is alleged to be directly liable to the defendant. The defendant may only implead one "who is or may be liable to him for all or part of the plaintiff's claim against him." Ga. L. 1966, pp. 609, 627; Ga. L. 1969, p. 979 (*Code Ann.* § 81A-114). Southern Railway can not maintain a direct action for damages against Chattahoochee Brick, as third-party defendant, on a claim which constitutes no part of the claim of Insurance Company against Southern Railway.

(c) For the reasons given in subdivisions (a) and (b) above, we affirm the judgments of the trial court denying Southern Railway's motion for summary judgment against Chattahoochee Brick, and sustaining Chattahoochee Brick's motion for summary judgment against Southern Railway.

*Judgments affirmed in part; reversed in part. All the Justices concur.*