## 71142. SHEDD v. GOLDSMITH CHEVROLET et al.
### (343 SE2d 733)

BEASLEY, Judge.

Goldsmith Chevrolet brought an action against Shedd to recover a sum alleged to be due under the terms of an automobile rental contract and for damages to the rental vehicle. Shedd filed an answer which included a counterclaim against Goldsmith and third-party complaints against Chrysler Credit Corporation and Horace Mann Insurance Company. After discovery, the filing of pleadings and amended pleadings by the participants and the denial of Shedd's motion to change the status of parties, Shedd filed a second amendment to the answer which totally superseded the original. The second amendment set forth a new counterclaim against Goldsmith and restated the third-party claims, which are now conceded to be direct claims when they should be secondary claims, against Chrysler and Horace Mann. Subsequently, on November 5, 1984, an order was entered by consent of the parties and prepared by Shedd's counsel, requiring all parties to complete discovery and make any amendments to the pleadings by November 17. Thereafter, Chrysler moved to strike the "third-party complaint" (as contained in the second amendment) against it and Horace Mann filed a motion to dismiss or in the alternative to sever the "third-party complaint" against it. On December 3, Shedd requested that she be permitted to amend her answer so as to include third-party complaints against both Chrysler and Horace Mann.

The trial court conducted a hearing on the various motions. It denied Shedd's motion to amend. It granted Goldsmith's motion for partial summary judgment on the rental it sought and for summary judgment on Shedd's counterclaim, Chrysler's motion to strike Shedd's claim against it, and Horace Mann's motion to dismiss or to sever Shedd's claim against it. This appeal by Shedd follows.

To begin at the beginning, Shedd's damaged vehicle was taken to Goldsmith for repairs; and a vehicle was rented to Shedd for use while the work was being accomplished. Shedd had insurance with Horace Mann covering the repairs to her automobile (less $100 deductible) and the car rental while her own was being repaired. Horace Mann mailed a check for the repairs to Shedd. The check required the endorsement of Shedd, Goldsmith and Chrysler, the holder of a security instrument on the automobile. After completion of the repairs, Chrysler refused to endorse the check for delivery to Goldsmith until it inspected Shedd's automobile. Goldsmith refused to allow the vehicle to be taken for inspection to Chrysler's until it received payment for the repairs. Apparently Shedd was unable to pay Goldsmith independent of the insurance check so she continued to drive the rental car until arrangements for inspection were made between Gold-

smith and Chrysler, well over a month after the car was ready to be picked up. When Shedd did go to Goldsmith after the repairs were paid for on August 18, 1982, she was presented with a bill for the car rental in the amount of $1,328.70.

According to Shedd's deposition, she explained to Goldsmith that she had insurance to pay for the car rental and she would leave her car there until she contacted the insurance company to get the money for the car rental. Later, during her testimony, in response to the question "did they release your car to you at that time?" she responded: "No. That's when I stated that I did not have the money to pay for the car rental due to the fact that I had to drive it all this time; so I told them to hold my car until I could send off the insurance claim and get a check back to pay for the car rental." She also testified that initially she told them to keep her automobile "until I collected the insurance for the car rental."

Shedd learned when she contacted Horace Mann that the car rental reimbursement was limited to $150. As a result when she returned to Goldsmith to retrieve her car and tendered that amount, Goldsmith refused to release her automobile. Eventually it was repossessed by Chrysler Credit for default in purchase money payments.

1. (a) Shedd contends it was error to disallow her proposed amendment to the complaint. This amendment was tendered on December 3, 1984, well after the November 17 deadline set forth in the order of November 5 which had been entered pursuant to a consent agreement between the various parties and was prepared by Shedd's counsel. In the absence of fraud or some other equitable ground a party is bound by the terms of an agreement he voluntarily enters into. Moreover, one is bound to comply with a valid court order. Therefore, it is spurious to contend that the order was not a pretrial order as contemplated by OCGA § 9-11-15 and thus Shedd could amend as a matter of right. The November 5 order, specifically limited the time for amending the pleadings. The order by setting a particular time controlled as to the expiration date for amendments. By doing this, though not so labeled, it was in effect a pretrial order as to these matters. *Mullinax v. Shaw*, 143 Ga. App. 657, 660 (3) (239 SE2d 547) (1977). Moreover by participating in the consent agreement Shedd waived her right to rely on OCGA § 9-11-15 (a) regarding amendments to her complaint. She apparently so recognized, as she thereafter sought leave of court to amend when she desired to amend for yet the third time.

We are not unmindful that, even after the entry of a pretrial order, amendments should be liberally granted by the court, as justice requires. *Leslie, Inc. v. Solomon*, 141 Ga. App. 673, 674 (1) (234 SE2d 104) (1977). Nevertheless, in making such determination the trial court acts within its discretionary powers. *Cooper v. Rosser*, 232 Ga.

597, 598 (2) (207 SE2d 513) (1974). Modification of such an order may be required "to prevent manifest injustice." *Gaul v. Kennedy,* 246 Ga. 290 (1) (271 SE2d 196) (1980).

While "[m]ere delay in seeking leave to amend is not sufficient reason for its denial" (*MCG Dev. Corp. v. Bick Realty Co.,* 140 Ga. App. 41, 43 (2) (230 SE2d 26) (1976)), this "does not mean that amendments will be allowed regardless of the diligence of a party." *Blount v. Kicklighter,* 125 Ga. App. 159, 162 (4) (186 SE2d 543) (1971). In view of the history of this case, the trial court did not abuse its discretion in refusing to allow the amendment. See *Patterson v. Duron Paints of Ga.,* 144 Ga. App. 123 (1) (240 SE2d 603) (1977).

(b) Since concededly the second amendment to the claim fails to set forth a basis for a third party complaint against Chrysler based on secondary liability (see *Dorsey Heating &c. Co. v. C. C. Dickson, Inc.,* 153 Ga. App. 599, 600 (2) (266 SE2d 282) (1980); *Southern R. Co. v. Ins. Co. of North America,* 228 Ga. 23, 31 (183 SE2d 912) (1971); *National Life &c. v. Massey-Ferguson,* 136 Ga. App. 311, 312 (1) (220 SE2d 793) (1975)), the trial court did not err in dismissing the complaint, as amended for the second time, against Chrysler.

2. Shedd asserts error regarding the grant of Goldsmith's motion for partial summary judgment on its complaint. From the proof offered there was no genuine issue of material fact as to the amount Shedd owed under the terms of the rental contract. Thus, partial summary judgment on that issue was authorized.

However, Shedd asserts that summary judgment on the main complaint could not be granted while her counterclaim, seeking an amount which could offset that claim, was still pending. In *Mock v. Canterbury Realty Co.,* 152 Ga. App. 872, 874 (1) (264 SE2d 489) (1980) the court resolved this confusing area of the law. It was there held that when a valid counterclaim is pending the trial court has an inherent discretion to weigh the equities of the situation and should examine the question of the motion's viability on its own merits, independently of the merits of the pending counterclaim. The decision disapproved those cases holding or implying that the court must deny a valid motion or that it was error *per se* to grant summary judgment on the main claim while a counterclaim is pending.

This disposes of the enumeration of error regarding the grant of partial summary judgment on the main complaint. Her counterclaim involved whether Goldsmith validly refused to return her car after it was determined that insurance would pay only $150 of the rental bill. She acknowledges that this was separate and independent of the amount due and unpaid on the rental bill. As suggested in *Mock,* rather than denying summary judgment on the rental bill simply because of the pendency of a counterclaim, the court can hold final judgment until the counterclaim is concluded. *Mock,* supra at 879.

3. This brings us to the question of the correctness of the summary judgment grant to Goldsmith as to Shedd's counterclaim. Shedd urges that Goldsmith wrongfully withheld her automobile, that there was a bailment relationship which Goldsmith, as bailee, breached by retaining her vehicle after she had paid for its repairs. Goldsmith also contends that a bailment existed. However, it asserts that Shedd, as bailor, gave it possession as security for the payment of her debt under the automobile rental contract (i.e., a pledge). Therefore, it argues that Goldsmith was entitled to possession of the automobile until payment for the rental was made and such payment was never made.

Clearly, whether Shedd was entitled to possession of her vehicle when she tendered the payment for its repair on August 18 and completed that transaction is not the issue. The problem is: under what arrangement did she then leave the vehicle while she obtained a reimbursement check for the rental car from Horace Mann?

"A pledge is a bailment of personal property as a security for some debt or engagement, the property being redeemable on specified terms." 68 AmJur2d 876, Secured Transactions, § 50. As succinctly stated in *First Nat. Bank v. Hattaway*, 172 Ga. 731, 735 (158 SE 565) (1931) "a pledge . . . is property deposited with another as security for the payment of a debt." The essential elements of a pledge are: "1) the existence of a debt or obligation and 2) the transfer of property to the pledgee, to be held as security." *Williams v. Espey*, 11 Utah2d 317 (358 P2d 903) (1961). No writing is required in connection with a pledge of tangible personal property; all that is necessary is a simple bailment accompanied by delivery of the property. 68 AmJur2d 883, Secured Transactions, § 55. However, there must be a contract of pledge. 72 CJS 8, Pledges, § 5. Regarding a pledge, possession passes, but not title. The pledge creates a lien on the property by the pledgee while legal title remains in the pledgor. *Bromley v. Bromley*, 106 Ga. App. 606, 608 (127 SE2d 836) (1962).

In our view here the crucial factor is the presence of a contract which expresses the intention of the parties that the property be held as security. *Jersey Security Co. v. Lottimer*, 20 NJ Misc 432 (28 A2d 623) (1942). Mutual assent or acceptance is necessary to constitute a valid pledge. *Peurifoy v. Loyal*, 154 S. Car. 267 (151 SE 579) (1930). Statements by one party to which the other does not assent are insufficient. *Brunswick &c. Co. v. Higgins*, 54 Mont. 11 (165 P 1109) (1917). Tested by these principles what do the facts here reveal?

Shedd, by deposition, on three occasions recounted what transpired. At first she testified that when she turned in the rental car she explained to a representative of Goldsmith that she had insurance to pay the car rental and would leave her own car there until she "contacted the insurance company to get the money for the rental of the

car." Subsequently, in response to inquiry as to whether her car was released to her at the time she tendered payment for repairs, she answered: "No. That's when I stated that I did not have the money to pay for the car rental due to the fact that I had to drive it all this time; so I told them to hold my car until I could send off the insurance claim and get a check back to pay for the car rental." Lastly, she was asked "you do agree that initially you told them to keep your automobile?" and responded: "Correct. Until I collected the insurance for the car rental."

Although the testimony may be subject to the construction that Shedd left her car as security for the amount she owed for rental of another car, it may also be construed as merely gratuitously leaving the vehicle with Goldsmith until the insurance position was clarified. Goldsmith, as movant for summary judgment, had the burden of showing that as a matter of law it was entitled to retain the vehicle under an agreement in the nature of a pledge. The proof fell short of that standard.

Thus, it was error to grant summary judgment on Shedd's counterclaim.

*Judgment affirmed in part; reversed in part. Deen, P. J., and Pope, J., concur.*

ON MOTION FOR REHEARING.

In support of the contention that we should reconsider our decision, counsel for Goldsmith cites a purported deposition of Westley Percival which was not included in the record and to which no reference was previously made in any of the briefs to this court. We are precluded from making decisions based on alleged facts which are not a part of the record.

DECIDED MARCH 12, 1986 —
REHEARING DENIED APRIL 3, 1986.

*Charles H. Wills, Charles L. Jurjevich*, for appellant.
*Eugene O'Brien, Stephen H. Block, E. Wayne Wallhausen*, for appellees.