## A94A2018. CHEN v. PROFIT SHARING PLAN OF DR. DONALD H. BOHNE, DDS, P. A.

(456 SE2d 237)

McMurray, Presiding Judge.

Richard Chen brought an action against the Profit Sharing Plan of Dr. Donald H. Bohne, DDS, P. A., by and through Dr. Donald H. Bohne, DDS, as its trustee ("the Profit Sharing Plan"), seeking (in relevant part) damages stemming from the Profit Sharing Plan's alleged conversion of collateral worth substantially more than amounts due on the underlying debt. The facts upon opposing motions for summary judgment reveal the following:

On August 28, 1986, Chen acquired a $95,500 promissory note and security deed from Frances F. Blankenship encumbering Blankenship's real property. This note bears interest at a rate of ten percent per annum, is based on thirty-year amortization of the loan and calls for a "balloon payment" of the remaining principal balance upon expiration of ten years. Blankenship is thus required to pay 120 consecutive monthly installments in the amount of $838.08.[1] However, before Blankenship's first payment became due on November 1, 1986, Chen exchanged the first 60 installments due under the loan for $29,132 in cash from the Profit Sharing Plan. He also assigned the Blankenship note and security deed to the Profit Sharing Plan and executed a document entitled, "AGREEMENT," whereby Chen assigned the Profit Sharing Plan as agent for servicing the Blankenship note and agreed to allow the Profit Sharing Plan to keep all proceeds of any foreclosure sale (regardless of surplus) resulting from default under the Blankenship note. Chen had the right to avoid any such foreclosure by either curing the default or paying the Profit Sharing Plan the "unamortized principal balance as shown on the amortization schedule, plus all advances and costs."[2] The Profit Sharing Plan agreed to reassign the Blankenship note and security deed to Chen after receipt of the first 60 installments under the Blankenship note.

On August 22, 1988, Chen borrowed $20,000 from the Profit Sharing Plan in exchange for a $20,000 promissory note bearing interest at a rate of 21 percent per annum, providing for monthly interest payments in the amount of $368.38, "with additional payments of principal paid on any due date of interest in amounts of $1,000.00 minimum and $1,000.00 increments," and requiring payment of the

---

[1] This ten-year balloon loan has an expected yield of $91,915.54. The principal balance of the loan after ten years is expected to be $86,845.81.

[2] This agreement provides an effective annual yield of more than twenty-four percent for the Profit Sharing Plan and is based on five-year amortization of a debt with an original principal balance equal to the amount the Profit Sharing Plan paid Chen for the first five years of the Blankenship loan, i.e., $29,132.

entire loan balance upon expiration of 34 months.[3] Chen pledged the Blankenship note and security deed as collateral for this loan, executing a "TRANSFER AND ASSIGNMENT" of the note and security deed and a document entitled, "ADDENDUM," whereby Chen agreed to sell the remaining 60 installments under the Blankenship note to the Profit Sharing Plan for $29,132. This "ADDENDUM" also provides that, "[i]n the event [Chen] shall fail to make said payments under the terms and conditions of [the $20,000 promissory] note made this date[,] the assignment of the collateral shall stand and no further duty shall be held between the parties, and the transfer shall be complete in full."

After 18 installments, Chen stopped making payments under the $20,000 promissory note in July 1990, and the Profit Sharing Plan (allegedly) posted a letter to Chen dated August 6, 1990, providing (in pertinent part) as follows: "[D]ue to [your] default, [the Profit Sharing Plan] claims all rights pursuant to various transfer agreements of promissory note and deed to secure debt from you to [the Profit Sharing Plan] which [the Profit Sharing Plan] already holds an interest. Such note and security deed originally executed by Frances F. Blankenship dated August 29, 1986 shall be subject to private sale at any time after August 20, 1990, which date is ten days subsequent to your presumed receipt of this letter allowing reasonable time for delivery of same." Chen denies receiving any such demand from the Profit Sharing Plan and deposes (in his affidavit) that he "never received any notice from the [Profit Sharing Plan] indicating or stating that the [Profit Sharing Plan] proposed to retain the Collateral in satisfaction of the obligation [under the $20,000 note]."

In an order granting summary judgment in favor of the Profit Sharing Plan, the trial court found (in pertinent part) that the Profit Sharing Plan did not wrongfully convert the Blankenship note and security deed and that the demand letter purportedly transmitted to Chen on August 6, 1990, was sufficient to satisfy the notice requirements of OCGA § 11-9-505 (2). This Code subsection allows for retention of collateral (upon default) in satisfaction of an underlying debt, but only upon written notice informing the debtor that he has 21 days in which to object to any such proposed retention of collateral. Although recognizing that the August 6, 1990, letter from the Profit Sharing Plan does not explicitly inform Chen of a proposal to retain the Blankenship note and security deed in satisfaction of the underly-

---

[3] According to a ledger sheet attached to the affidavit of Donald H. Bohne, DDS, the $368.38 monthly payments prescribed by this note cover only half of the monthly interest accruals on the 21 percent loan. Based on Bohne's figures, $32,521.52 would be the amount due on the $20,000 loan upon successful completion of all 34 payments prescribed by this promissory note.

ing debt, the trial court found the letter sufficient to place Chen on notice of such a proposal because it informed Chen that the Profit Sharing Plan claims " 'all rights pursuant to various transfer agreements of promissory note and deed to secure debt . . .' " and the "Agreement . . . between the parties . . . states '(i)n the event [Chen] shall fail to make said payments under the terms and conditions of [the $20,000 promissory] note made this date[,] the assignment of the collateral shall stand and no further duty shall be held between the parties, and the transfer shall be complete in full.' " Chen complains of this ruling on appeal. *Held*:

1. "OCGA § 11-9-505 (2) provides for the only situation in which collateral can be retained by a secured party in satisfaction of a debt. Under that Code section, the secured party has the option of retaining the collateral in satisfaction of the obligation, provided the creditor gives written notice of such proposal if he has not signed a statement *after* default renouncing or modifying his rights under this subsection." (Emphasis supplied.) *Willis v. Healthdyne, Inc.*, 191 Ga. App. 671, 673 (2) (382 SE2d 651). The written notice required by OCGA § 11-9-505 (2) must clearly state the creditor's proposal to retain the collateral in satisfaction of the debt and must notify the debtor that he has 21 days in which to raise an objection to such a proposal. Anderson, Uniform Commercial Code, Volume 9, p. 807, § 9-505:15. See *Braswell v. American Nat. Bank*, 117 Ga. App. 699, 700 (161 SE2d 420). Compare *Motor Contract Co. of Atlanta v. Sawyer*, 123 Ga. App. 207, 209 (3) (180 SE2d 282). The purpose of requiring such written notice of a creditor's proposal to retain collateral in lieu of the debt and of prohibiting waiver of such notice before default (in cases not involving the sale of accounts or chattel paper, OCGA § 11-9-502 (2); *C C Financial v. Ross*, 250 Ga. 832, 833 (2) (301 SE2d 262)) is to provide the debtor with options for reducing his loss when collateral has a value greater than the debt via redemption pursuant to OCGA § 11-9-506 or liquidation in a commercially reasonable manner as required by OCGA § 11-9-504. *Stensvad v. Miners &c. Bank of Roundup*, 517 P2d 715, 717 (1973). Allowing a debtor to reject a secured creditor's proposal to retain collateral in lieu of debt (after default) not only protects the debtor's right to mitigate his loss, it protects the creditor from claims of the debtor that the creditor should have disposed of the collateral. *Herring Mining Co. v. Roberts Bros. Coal Co.*, 747 SW2d 616, 619 (1988). See Anderson, Uniform Commercial Code, Volume 9, p. 800, § 9-505:5.

In the case sub judice, the letter allegedly posted to Chen on August 6, 1990, neither stated a proposal for the Profit Sharing Plan to retain the collateral in satisfaction of Chen's debt, nor advised Chen of his right to object to such disposition within 21 days after transmission of the written proposal. Moreover, the condition in the "AD-

DENDUM" providing for full and complete assignment and transfer of the collateral upon default by Chen amounted to nothing more than an unenforceable attempt at pre-default waiver of the debtor's rights under Article 9 of Georgia's Uniform Commercial Code. *Kellos v. Parker-Sharpe, Inc.*, 245 Ga. 130, 132 (2), 133 (263 SE2d 138); *GEMC Fed. Credit Union v. Shoemake*, 151 Ga. App. 705 (1), 706 (261 SE2d 443). Notwithstanding, the Profit Sharing Plan contends Chen was not entitled to notice under OCGA § 11-9-505 (2) because OCGA § 11-9-104 (h) specifically excludes transactions involving transfers of interests in or liens on real estate from the requirements of Article 9. This argument is without merit.

It is clear that Article 9 does not apply "to the *creation* or *transfer* of an interest in or lien on real estate. . . ." OCGA § 11-9-104 (h). However, the transaction between Chen and the Profit Sharing Plan does not involve the "creation" or "transfer" of an instrument involving an "interest in" or "lien on" real estate, it involves pledge of collateral or "lien" against negotiable instruments. " 'A pledge is a bailment of personal property as a security for some debt or engagement, the property being redeemable on specified terms.' 68 AmJur2d 876, Secured Transactions, § 50. As succinctly stated in *First Nat. Bank v. Hattaway*, 172 Ga. 731, 735 (158 SE 565) (1931) 'a pledge . . . is property deposited with another as security for the payment of a debt.' The essential elements of a pledge are: '1) the existence of a debt or obligation and 2) the transfer of property to the pledgee, to be held as security.' *Williams v. Espey*, 11 Utah2d 317 (358 P2d 903) (1961). . . . Regarding a pledge, possession passes, but not title. The pledge creates a lien on the property by the pledgee while legal title remains in the pledgor. *Bromley v. Bromley*, 106 Ga. App. 606, 608 (127 SE2d 836) (1962)." *Shedd v. Goldsmith Chevrolet*, 178 Ga. App. 554, 557 (3) (343 SE2d 733).

Although Chen gave the Profit Sharing Plan possession of the Blankenship note and security deed and executed a "TRANSFER AND ASSIGNMENT" of these instruments to the Profit Sharing Plan, the specific language of the "ADDENDUM" executed by the parties reveals that Chen completed these acts to enable the Profit Sharing Plan to "hold the [Blankenship] note and Security Deed . . . as collateral for said loan. . . ." Thus, while the Profit Sharing Plan had possession of the Blankenship security deed and note at the time of Chen's default, title to these instruments never vested in the Profit Sharing Plan. The Profit Sharing Plan only acquired a lien against the commercial paper, i.e., the security deed and the note. Consequently, since the transaction in the case sub judice never resulted in the "creation" or "transfer" of an interest in or lien against real property, the Profit Sharing Plan was not exempt from complying with any notice provision required under Article 9 of Georgia's Uniform

Commercial Code.

The trial court erred in finding that the letter allegedly posted to Chen on August 6, 1990, complied with the notice requirements of OCGA § 11-9-505 (2) and in granting summary judgment in favor of the Profit Sharing Plan. Chen is entitled to recover either damages for conversion of the collateral after default or damages prescribed by OCGA § 11-9-507 (1). *UIV Corp. v. Oswald,* 139 Ga. App. 697, 700 (229 SE2d 512). See Anderson, Uniform Commercial Code, Volume 9, p. 813, § 9-505:29. Compare *Willis v. Healthdyne, Inc.,* 191 Ga. App. 671, supra, where the debtor suffered no damage as a result of failure to provide notice pursuant to OCGA § 11-9-505 (2); and *Barney v. Morris,* 168 Ga. App. 426 (309 SE2d 420), where the jury rejected the debtor's claim for loss of profits because of a lack of notice of repossession of the collateral.

2. In light of our holding in Division 1 of this opinion, it is unnecessary to address Chen's remaining enumeration of error.

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 3, 1995 — RECONSIDERATION DENIED MARCH 28, 1995 —

*Ferguson & Saunders, Richard J. Storrs, Steven M. Kushner,* for appellant.

*David G. Crockett,* for appellee.