64166. TRUST COMPANY OF COLUMBUS et al. v. KITE et al.

QUILLIAN, Chief Judge.

This is an action for damages for conversion of property.

Appellees Kite, husband and wife, operated a motorcycle sales and service shop and utilized appellant Trust Company of Columbus (bank) to finance their business. Motorcycles purchased for sale were paid for by a floorplan financing agreement with the bank with the motorcycles as collateral. Other operations were funded by personal notes of the Kites. In December, 1977 the Kites decided to terminate the business and to sell their inventory to pay off their indebtedness to the bank. At that time, the Kites' inventories listed motorcycles valued at about $10,000, a parts inventory of about $25,000, and they owed the bank about $25,000. The bank continued the floorplan agreement on the motorcycles and consolidated the Kites' other indebtedness into one note secured by the equity in the Kites' home and truck, the business equipment and parts inventory, and the cash value of Mr. Kite's life insurance. Some of the motorcycles were placed with another dealer for sale and other motorcycles along with the parts inventory and other business equipment were placed in storage. In the following 22 months a few of the motorcycles and some of the parts inventory were sold and applied to the indebtedness. However, most of the property remained in storage and little progress had been made in reducing the Kites' indebtedness to the bank. In October, 1979 the floorplan balance was nearly $12,000 and about $15,000 was owed on the separate note. At that time, the bank asked the Kites for and obtained control over the mortgaged property. The key to the storage facility was given to the bank and the motorcycles not in storage were delivered by the Kites to appellant Sexton's Auto Center for storage per direction of the bank. At the end of 1979, the Kites sold their house and from the proceeds paid $16,000 to the bank on their indebtedness. In January, 1980, without any notice to the Kites, the bank accepted a bid from Sexton's Auto Center for the remaining motorcycles, the parts and everything else in storage and sold them for $400. When the Kites discovered that their property in which the bank had a security interest had been sold by the bank

without notice to them for far less than they believed it was worth and that other property of theirs in the storage facility in which the bank had no security interest had also been sold, they commenced this action against the bank and Sexton's. A jury trial resulted in a verdict and judgment for the Kites of $37,000 actual damages against the bank and Sexton's, and for $50,000 punitive damages against the bank only, from which this appeal is taken. *Held:*

1. Appellants correctly assert that the trial court erroneously charged the jury on the effect of the failure to give notice to the Kites before disposing of the mortgaged property.

The property disposed of fell into three categories. There were the motorcycles in which the bank had a security interest under the floorplan agreement, which also provided that the bank had all the rights of a secured party under the Uniform Commercial Code including the right to sell the collateral after giving the Kites five days written notice. There was the parts and equipment inventory in which the bank had a security interest under the consolidated note made when the business was closed. Finally, there was personal property of the Kites in storage with the mortgaged property in which the bank had no interest at all.

The evidence was undisputed that the Kites were in default on their indebtedness to the bank. The bank admitted that the Kites were given no notice whatsoever of the sale.

The Uniform Commercial Code, specifically Code Ann. § 109A-9—501 et seq., (Ga. L. 1978, pp. 1081, 1128 et seq.), was applicable to the sale of the secured property. § 503 permitted the bank, the secured party, to take possession of the secured property on the debtors' default. § 504 authorized the bank, as secured party, to sell the collateral upon default and apply the proceeds against the indebtedness, provided the sale was in a commercially reasonable manner with reasonable notification of the sale given to the debtor. § 507 sets forth the secured party's liability for failure to comply with the disposition by sale of collateral in a commercially reasonable manner after reasonable notification of the sale is given the debtor. "If the disposition has occurred the debtor . . . has a right to recover from the secured party any loss caused by a failure to comply with the (reasonable notice and sale provisions)."

The jury was instructed on conversion of the property in which the bank had no security interest and damages therefor.

As to the secured property the trial court properly instructed in accordance with the Uniform Commercial Code that the failure of the bank to give notice to the Kites as required by law or to sell the property in a commercially reasonable manner gave the Kites the right to recover any loss caused thereby. Instructions were then given

defining and explaining sale in a commercially reasonable manner and that the damages for failure to sell in such a manner would be the difference between the value of the property sold and the amount of debt owing thereon. The only specific mention of the effect of the failure to give notice was as follows:

". . . if you should find that the (bank) was required to give the Kites five days written notice before selling . . . the mortgaged property we're talking about, and if you should find that no such written notice was given by the bank to the (Kites), then you would be authorized to find that the bank . . . had no right whatsoever to dispose of the (Kites') property."

Instructing that the bank had no right to sell the property if no notice was given was erroneous as the Uniform Commercial Code does not prohibit sale without notice. A debtor is entitled to recover any loss caused by such a sale; that is, a loss caused by a sale at a less than adequate price. Code Ann. § 109A-9—507, supra. He is also protected from any action by the secured party to recover any deficiency between the sale price and the balance owing. *Farmers Bank v. Hubbard,* 247 Ga. 431, 436 (276 SE2d 622).

This incorrect instruction tended to confuse the jury as it contradicted prior instructions indicating that the bank could sell the property without notice but that the bank would be liable for any loss caused by the sale. The instruction also gave no measure of damages for a sale without notice, only that such a sale was not authorized, thus further confusing the jury as to which of the measures of damages they had previously heard should be applied.

"[W]here the court gives two contradictory instructions in different portions of the charge without retracting either, and where the result may well confuse the jury and cause them to adopt a measure of damages which they might not otherwise use, the result cannot be held harmless error. [Cits.]" *State Highway Dept. v. Hilliard,* 112 Ga. App. 498, 499 (145 SE2d 824).

2. The remaining enumerations are either mooted by the foregoing, are not meritorious, or are not likely to recur in a new trial.

*Judgment reversed. Shulman, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 8, 1982 —
REHEARING DENIED OCTOBER 26, 1982 —

*Lee R. Grogan,* for appellants.
*Charles A. Gower,* for appellees.

ON MOTION FOR REHEARING.

Appellees assert that the sale of the secured property did not fall

under the Uniform Commercial Code because the five day written notice provision of the security agreement prohibited sale without notice and therefore the trial court in so instructing did not err as we have found.

The security agreement provides: "Bank shall have all rights of a secured party under the Uniform Commercial Code and all applicable laws, cumulatively, including the right, to sell the collateral, after giving Dealer five days written notice. . . ."

Construing this provision, we find that the agreement does not make the Uniform Commercial Code inapplicable and that the five day written notice provision is a mere specification of the reasonable notification requirement of Code Ann. § 109A-9—504. The bank was not prohibited from selling the collateral, but in doing so without notice became subject to the liability imposed by Code Ann. § 109A-9—507.

*Accordingly, the motion for rehearing is denied.*