A89A0858, A89A0859. WILLIS v. HEALTHDYNE, INC.;
and vice versa.
(382 SE2d 651)

DEEN, Presiding Judge.

Frederick L. Willis III contends that he purchased 3,500 shares of Healthdyne stock in 1972 for $2 per share and that he gave a nonrecourse note which was secured by the shares as consideration. Healthdyne claims that Willis defaulted on the note and, pursuant to an agreement between the parties, the certificate which represented the 3,500 shares was cancelled and the shares were distributed to an-

other party. The value of the shares at the time of Willis' default was less than Willis' debt as represented by the note, and Healthdyne claims that it discharged Willis' obligation and did not seek a deficiency against him.

Four years after the default, Willis learned that Healthdyne was preparing for its first public stock offering and that the price would be $17.75 per share. Approximately two weeks before the public offering, Willis' attorneys contacted Healthdyne demanding that 3,500 shares of Healthdyne's common stock be issued to Willis in return for their tender of payment under the note. The demand was rejected, and Willis brought suit against Healthdyne claiming that cancellation of the shares without notice to him violated the Uniform Commercial Code, OCGA § 11-9-502, and that Healthdyne's cancellation of the stock certificate and distribution of the shares to a third party constituted conversion. He also sought attorney fees and punitive damages.

At the conclusion of the jury trial, Healthdyne moved for a directed verdict. The trial court granted the motion, holding that cancellation of the stock certificates did not constitute conversion, and that counsel's stipulation that the shares were worth less than $2 when they were cancelled did not state a claim under the Uniform Commercial Code because Willis had not suffered any actual damages when they were cancelled. As Willis did not prevail on his substantive claims, the court also directed a verdict on his claims for punitive damages, prejudgment interest and attorney fees.

### Case No. A89A0858

1. Healthdyne enacted a restricted stock plan in the early 1970's. Participants in the plan executed three documents: a Restricted Stock Purchase Agreement, a Secured Note Collateral Agreement and a nonrecourse Secured Note. The documents set forth the rights and obligations of the parties and were executed by Healthdyne and Willis on December 23, 1972. Willis agreed to purchase 3,500 shares of Healthdyne stock at $2 per share. Willis reviewed each document with Healthdyne's president before he signed it. He did not pay anything for participation in the plan, but executed a nonrecourse note in which he promised to pay the principal amount of the stock purchase ($7,000) plus interest no later than December 23, 1977. The only collateral pledged was the certificate for 3,500 shares. The collateral agreement provided that Willis' interest in the shares was governed by it, and that it entitled Healthdyne to sell or otherwise liquidate the collateral upon default and to apply the proceeds to Willis' obligation. The agreement also provided that in the event of Willis' default the pledged stock could be liquidated "with or without any advertisement or notice whatsoever as the company in its sole discretion shall

determine." (Willis' contention that the restricted legend placed upon his certificate was improper is misplaced because he agreed to the placing of such a restriction in the agreement.)

The evidence showed that by December 23, 1977, when the non-recourse note was due, Healthdyne's stock was selling for $1 per share, or one-half price that Willis agreed to pay for it under the note. He defaulted. Later, when he was given other opportunities to purchase shares of stock at less than $2 per share, he declined.

Healthdyne took steps to cancel Willis' certificate on April 30, 1980, by sending a letter to Trust Company Bank instructing the bank to cancel the certificate and issue new shares to other plan participants. The certificate was marked "cancelled" on May 1, 1980. Willis did not take any action until the following year, when Healthdyne was contemplating a public offering of its stock.

A sale of collateral, even if it is without notice, does not constitute conversion, but a defaulting debtor can recover actual damages under OCGA § 11-9-507 for any loss caused by an inadequate sale price. *Clark v. Gen. Motors Acceptance Corp.*, 185 Ga. App. 130, 132 (363 SE2d 813) (1987); *Trust Co. of Columbus v. Kite*, 164 Ga. App. 119 (294 SE2d 606) (1982). The debtor, however, is protected by a rebuttable presumption that the value of the collateral is equal to the indebtedness. *Emmons v. Burkett*, 256 Ga. 855, 857 (353 SE2d 908) (1987).

2. Appellant, however, argues that the mere cancellation of the certificate does not constitute a sale or other disposition of the stock under OCGA § 11-9-504 and that OCGA § 11-9-505 (2) provides for the only situation in which collateral can be retained by a secured party in satisfaction of a debt. Under that Code section, the secured party has the option of retaining the collateral in satisfaction of the obligation, provided the creditor gives written notice of such proposal if he has not signed a statement after default renouncing or modifying his rights under this subsection. The debtor has 21 days in which to raise an objection to such a proposal. This Code section has been held to set forth a permissive, not a mandatory, remedy. *McCullough v. Mobiland*, 139 Ga. App. 260 (228 SE2d 146) (1976). Under OCGA § 11-9-501, which sets forth the rights and remedies of the secured parties, subsection (2) states that "the debtor has the rights and remedies provided in this part, *those provided in the security agreement*, and those provided in Code Section 11-9-207." (Emphasis supplied.)

In making his arguments as to lack of notice of Healthdyne's decision to cancel the certificate and retain the stock in lieu of the debt, appellant totally overlooks those provisions in the Collateral Agreement in which he granted Healthdyne the right to choose the course of action which it took. As the trial court astutely pointed out, Willis suffered no damages because the stock was worth less than the

amount of the debt, and Healthdyne honored its part of the agreement not to seek a deficiency in the event of a default.

3. Where a note provides a specific date of maturity, a cause of action against the maker accrues on the day after maturity. OCGA § 11-3-122 (1) (a). Willis, through his counsel, admitted at trial that the note required payment by December 23, 1977, and that he failed to make the required payment. He does not contend that Healthdyne had no right of possession of the certificate after default. He argues that he should have been permitted to redeem the collateral nearly four years after default, when the value of the stock appeared to be worth over seventeen dollars a share in the near future.

Under OCGA § 11-9-506, the defaulting party is permitted to redeem the collateral only before the secured party has disposed of it or entered into a contract for its disposition "by tendering fulfillment of all obligations secured by the collateral," as well as expenses incurred by the secured party in retaking, holding, etc. the collateral. All the evidence showed that Healthdyne had disposed of the collateral as it was permitted to do under the Collateral Agreement and discharged Willis' obligations prior to his demand for redemption. His request was therefore untimely.

4. As Willis did not suffer any actual damages, the trial court did not err in granting a directed verdict against him. He stipulated that the shares were worth less than $2 each when the certificate was cancelled approximately three years after his default. The recovery of "any loss" by the debtor under OCGA § 11-9-507 (1) for the creditor's noncompliance with the Codal provisions must necessarily be limited to actual damages caused by a sale at less than an adequate price. See *Trust Co. of Columbus v. Kite*, supra. Appellant did not suffer such damages.

### Case No. A89A0859

As Case No. A89A0858 is affirmed, it is not necessary to address the issues raised in the cross-appeal, and the same is dismissed.

*Judgment in Case No. A89A0858 affirmed. Case No. A89A0859 is dismissed. Birdsong and Benham, JJ., concur.*

DECIDED MAY 9, 1989 —
REHEARING DENIED MAY 25, 1989 —

*Davis, Matthews & Quigley, Ron L. Quigley, Robert E. Casey, Jr., James E. Gilson,* for appellant.

*King & Spalding, William S. Duffey, Jr., William A. Clineburg,*

*Jr.*, for appellee.